[Sac. No. 586.   Department One.—December 19, 1899.]

COUNTY OF SACRAMENTO, Respondent, v. SOUTHERN PACIFIC COMPANY et al., Appellants.

Action for Money Had and Received—Equity and Good Conscience.— An action for money had and received is based upon the principle that one party has money which in equity and good conscience belongs to another; and, where the defendant has no money which belongs in equity and good conscience to the plaintiff, the action cannot be maintained.

Id.—Action by County—Money Paid for Bridge—Good Faith—Invalid Contract.—An action cannot be maintained by a county to recover back money paid under a contract entered into in good faith and in accordance with the advice of its law officer, for the construction of a railroad bridge across a river separating it from another county, with a separate overhead roadway, to be kept in order by the railroad company for free public highway purposes, the construction of which was completed and enjoyed by the public, notwithstanding the contract may be invalid, for want of compliance with the requirements of the law.

Id.—Equitable Estoppel of County—Benefit under Equitable Contract Legally Defective.—A county, state, or municipality may be equitably estopped by its acts, in the same manner as an individual, when acting within the general scope of its powers. A county paying money for a bridge to be used for highway purposes, which has been completed, and of which the county enjoys the benefit, is estopped to maintain an action to recover the money, if the contract, under which it was paid, though legally defective, was not immoral, inequitable, or unjust.

Id.—CONSTRUCTION OF COUNTY GOVERNMENT ACT—RECOVERY OF MONEY ILLEGALLY PAID—EQUITABLE ESTOPPEL—GENERAL POWERS OF SUPERVISORS.—Section 8 of the County Government Act, providing for the recovery of money paid by order of the supervisors "without authority of law," only applies to payments which the board has no general power to make, and does not affect the principle of equitable estoppel as applied to payments made within the scope of the general powers of the board, and by virtue of which it has acquired a benefit, or an interest of which it retains the enjoyment.

Id.—GENERAL POWER OVER BRIDGES.—A board of supervisors has general power to construct, buy, or rent a bridge, or to purchase an exclusive right of way over a bridge, and may be equitably estopped to recover back money paid therefor, which has secured to it a benefit, though the forms of law were not complied with in making the contract under which it was paid.

APPEAL from a judgment of the Superior Court of Sacramento County and from an order denying a new trial. John Hunt, Judge, presiding.

The facts are stated in the opinion of the court.

A. L. Hart, for Appellants.

The contract was within the general and permanent powers of the board of supervisors. (Pol. Code, sec. 2643, subd. 5, secs. 2713, 4001; County Government Act of 1891, sec. 25, subd. 4; Stats. 1891, p. 106.) Section 8 of the County Government Act only applies when the board has no jurisdiction to act. The board is estopped from repudiating and recovering back the payment made in good faith under which it has secured and enjoyed a benefit, which it had general power to acquire. (5 Thompson on Corporations, secs. 5975, 5978; *Hitchcock v. Galveston*, 96 U. S. 356; *Argenti v. San Francisco*, 16 Cal. 266; *Brown v. Atchison*, 39 Kan. 37; 7 Am. St. Rep. 515; *Curnen v. Mayor*, 79 N.Y. 511; *East St. Louis v. East St. Louis Gas-Light etc. Co.*, 98 Ill. 415; 38 Am. Rep. 97, 102; *Hutchison etc. Ry. Co. v. Fox*, 48 Kan. 70; 30 Am. St. Rep. 273; *Knox Co. v. Aspinwall*, 21 How. 544; *Hannibal etc. R. R. Co. v. Marion Co.*, 36 Mo. 294; *Houfe v. Fulton*, 34 Wis. 608; 17 Am. Rep. 463; *Pine Grove v. Talcott*, 19 Wall. 678; *Memphis etc. R. R. Co. v. Dow*, 19 Fed. Rep. 388-98; *Thompson v. Lambert*, 44 Iowa, 239-48; *Kneeland v. Gilman*, 24 Wis. 39; *Chapman v. Douglas Co.*, 107 U. S. 348-

55; *Ward v. Forrest Grove*, 20 Or. 355; 2 Herman on Estoppel, sec. 1021.)

Frank D. Ryan, District Attorney, and J. Charles Jones, for Respondent.

The contract, not having been made in the statutory mode, is not binding on the county. (*Murphy v. Napa Co.*, 20 Cal. 497; *Linden v. Case*, 46 Cal. 172; *Glass v. Ashbury*, 49 Cal. 571; *Ertle v. Leary*, 114 Cal. 238; *Winn v. Shaw*, 87 Cal. 631.) The contract being void and illegal, the doctrine of estoppel cannot be invoked. (*Sutro v. Pettit*, 74 Cal. 336; 5 Am. St. Rep. 442; *County of Modoc v. Spencer*, 103 Cal. 502; *McFarland v. Mc-Cowen*, 98 Cal. 331.)

GAROUTTE, J.—This is an action to recover fifteen thousand dollars, and twenty per cent in addition thereto as damages, from the aforesaid defendants. Judgment was rendered for the amount claimed, and an appeal is now taken from that judgment and from the order denying a motion for a new trial.

The facts in substance are these: The California Pacific Railroad Company contemplated building a railroad bridge across the Sacramento river at Sacramento city, connecting the counties of Sacramento and Yolo. The construction of this bridge would result in the demolition of the old railroad bridge between the two counties, which also was used by the public for travel in vehicles, on foot, etc., and would necessarily prevent travel from one county to the other. The board of supervisors of Sacramento county, hearing of the contemplated improvement, entered into negotiations with the California Pacific Railroad Company, whereby it was agreed that the county should pay to it fifteen thousand dollars upon December —, 1893, and fifteen thousand dollars upon the completion of the structure. In consideration of the aforesaid agreement upon the part of the county, said railroad company promised "to construct and maintain in connection with said new railroad bridge an overhead or separate roadway, to be maintained by the California Pacific Railroad Company for free public highway purposes, and to be independent of either tracks or trains." The company further agreed, in consideration of the aid ex-

tended in the form of this thirty thousand dollars, to prosecute the work with diligence and finish the construction before December 31, 1895. It was also stipulated that if the work was not completed by the aforesaid time the company was to receive nothing from Sacramento county, and also refund the payment already made. At this stage of the proceedings the district attorney of plaintiff advised the board of supervisors that it had the power to enter into such a contract with defendants, and further advised the board that the respective action taken at that time by the county and the railroad company, in the form of written offers by the company and resolutions passed by the board, amounted in law to a legal, valid contract between the parties. Thereafter the first payment of fifteen thousand dollars was made to the company, and the work of construction begun. In October, 1895, the county of Sacramento, upon the claim that it had never entered into a valid, binding contract with defendants to pay the aforesaid thirty thousand dollars, brought this action to recover the sum of fifteen thousand dollars already paid, with twenty per cent additional as damages in the form of a penalty, the basis of this claim being that the money was paid without authority of law and could be recovered at the suit of the district attorney of the county. The contract is claimed to be void by reason of the fact that it was entered into contrary to the statutes, which call for plans and specifications, notices, bidding, etc., as conditions precedent to the building of a bridge by the county. The bridge was completed in December, 1895.

Among other defenses relied upon an estoppel is set out, and upon this question of estoppel the court made the following finding of fact: "It is true that said overhead roadway upon said new bridge was fully constructed and opened to the public on the sixteenth day of December, 1895; and that ever since that time the same has been used by the inhabitants of Sacramento and Yolo counties for travel to and fro between said counties, with immunity from contact with their trains or tracks; and that said public has had the exclusive use of said overhead roadway without toll or charge; and that no railroad track has been laid thereon. And that said overhead roadway has been constructed and maintained in a good and substantial manner."

This is, in substance, an action to recover money had and received, and this character of action is based upon the principle that one party has money which in equity and good conscience belongs to another. In the face of the facts quoted we are at a loss to see how this money in equity and good conscience belongs to Sacramento county. If the plaintiff had lived up to its contract to the letter and paid the entire sum of thirty thousand dollars to defendants, and if at some future time defendants had closed this overhead roadway, we can readily imagine that the county of Sacramento would have at once asked and obtained relief from the courts, any question of *ultra vires* contract or defective contract to the contrary. Certainly, under such circumstances the county would be entitled to relief, for defendant would not be in a position to raise any question as to the invalidity of the contract under which the money was paid to it. With the money in hand they would be absolutely estopped upon every principle of common justice from casting a single speck upon the binding force of the contract which had been entered into with the county, and upon which it had received the money. The rule works equally well the other way, and we are satisfied that this plaintiff is estopped from securing a return of the money. There is no claim that the county was defrauded. There is no claim that the benefits accruing to the county were not equal to the expenditure made. By this transaction the county has secured an exclusive right of way over the bridge of defendants as long as that bridge remains. It may be said that the easement of right of way over the bridge, with the annexed covenant to keep in repair, is far more valuable than a perfect title to the bridge itself. For the public have all the benefits of the bridge without any of the burdens accompanying its ownership.

Many legal complications arise in the building of a bridge across a stream forming the boundary line between two counties; neither county is able to deal with the question alone; it appears that the consent of both is required; it is extremely doubtful if the statutes bearing upon the course to be followed by boards of supervisors in building bridges within the county are applicable to the building of bridges over streams dividing

two counties; legislation upon the question is lacking, and, what little there is, most indefinite. Possibly in this case the law was not carried out. Possibly, the defendants, aside from any question of estoppel or ratification, could not have recovered either installment of the thirty thousand dollars to be paid. But still the all-important fact remains that these parties entered into the contract in the utmost good faith. The advice of the law officer of the county was taken, and he advised that the contract was a lawful one and was sufficiently evidenced; the work contracted for was done; the money was paid for the work; the party paying the money received full value for it, and still enjoys the benefits received from the contract. Under such circumstances a plain example of estoppel is before us, and by reason of that estoppel the plaintiff is forever barred from recovering the money involved in this litigation. If a municipality purchase a fire-engine, and possession is taken and purchase price paid, in an action by the municipality to recover the amount paid, by reason of invalidity in the contract, we imagine no court would grant the relief—at least while the municipality retained possession of the engine. And this, too, notwithstanding the widest departure from the statute may have been practiced in the making of the contract. The case at bar in principle differs but little from the illustration given.

There is nothing so sacred about a municipality that an estoppel may not be raised against it by its acts. In equity and good conscience, like individuals, it is bound to treat its neighbors fairly and justly. In *Los Angeles v. Cohn*, 101 Cal. 373, this court, in order to do justice, held that the acts of the city were such as to estop the public from questioning the title of the defendants in that action to a strip of land claimed by the city to be a portion of a public street. The question of estoppel between a county and an individual involves no such grave difficulties. The doctrine of estoppel against municipalities is universally applied. It is said in Bigelow on Estoppel, section 1128: "But it is a well-settled principle, applicable alike to states or the United States, that whenever a government descends from the plane of sovereignty and contracts with parties, such government is regarded as a private person itself and is bound

accordingly. . . . . A state in its contracts with individuals must be judged and must abide by the same rules which govern similar cases between individuals; and, whenever such a contract comes before the courts, the rights and obligations of the contracting parties will be adjudged upon the same principles as if both contracting parties were private persons." It thus appears that there is no substantial difference in the application of the doctrine as between private and public corporations. Indeed, the whole history of estoppel, as involved in this case, is strongly and convincingly stated in *Brown v. Atchison*, 39 Kan. 37, in the following language: "Where a contract is entered into in good faith between a corporation, public or private, and an individual person, and the contract is void in whole or in part because of want of power on the part of the corporation to make it, or enter into it in the manner in which the corporation enters into it, but the contract is not immoral, inequitable, or unjust, and the contract is performed in whole or in part by and on the part of one of the parties, and the other party receives benefits by reason of such performance over and above any equivalent rendered in return, and these benefits are such as one party may lawfully render and the other party lawfully receive, the party receiving such benefits will be required to do equity toward the other party, by either rescinding the contract and placing the other party in *statu quo*, or by accounting to the other party for all of the benefits received for which no equivalent has been rendered in return; and all this should be done as nearly in accordance with the terms of the contract as the law and equity will permit." In the case of *Commissioners of Knox County v. Aspinwall*, 21 How. 544, it is said: "Citation of authorities to this point is unnecessary, as the whole subject has been recently examined by this court, and the rule clearly laid down that a corporation, quite as much as an individual, is held to a careful adherence to truth in their dealings with other parties, and cannot, by their representations or silence, involve others in onerous engagements, and then defeat the calculations and claims their own conduct has superinduced." From these authorities, and many others which might be cited, it is apparent that public corporations, like individuals, are bound to act in good faith and deal justly; that they cannot

be allowed to enter into contracts involving others in expensive engagements, silently permit these contracts to be executed, and then repudiate them because the statutory steps have not been pursued in the letting of the contracts.

This action is largely based upon authority claimed to be found in section 8 of the County Government Act, wherein it is provided: "Hereafter, whenever any board of supervisors shall, without authority of law, order any money paid as a salary, fees, or for other purpose, and such money shall have been actually paid . . . . the district attorney of such county is hereby empowered, and it is hereby made his duty, to institute suit in the name of the county against such person or persons to recover the money so paid, and twenty per cent damages for the use thereof." This statute was never intended to have the effect, and cannot now be construed as having the effect, of nullifying the principle of law we have been considering, known as an equitable estoppel. Money paid "without authority of law" means money paid out by the board of supervisors upon claims based upon a subject matter not within the scope of the powers of the board. In other words, it is the application of the moneys of the county to a purpose not within the general powers of the board. But the power of a board of supervisors to construct bridges, to build and lay out roads, to secure easements in the form of rights of way for public travel, are matters within the jurisdiction of the board of supervisors. Again, by subdivision 8 of section 25 of the County Government Act, the board has the power to purchase or lease real or personal property necessary for the use of the county. The county could buy a bridge or lease a bridge. As already suggested, in substance this transaction was a purchase of this overhead roadway. The county is the owner of everything pertaining to the bridge that is valuable, with the single exception of the old lumber and iron when decay overtakes it. If a county may buy a bridge, or rent a bridge, it may purchase the exclusive right of way over a bridge. We need not split hairs in giving a technical name to the interest which the county has in the bridge, but it is apparent to everyone that it has a substantial interest therein, and, in the absence of some claim or showing to the contrary, we may assume that such interest is full value for the

money expended.   We are not now passing on the validity of the contract entered into between the parties to this litigation. It is not material here.   We are not intimating but that at the instance of a taxpayer in the early history of these negotiations the entire transaction may not have been judicially killed. All that we have said bears upon the single question of estoppel, and is said in view of the conclusion arrived at by the court that an equitable estoppel against plaintiff should be held in this case.

For the foregoing reasons the judgment and order are re-versed, and the cause remanded.

Van Dyke, J., and Harrison, J., concurred.

A rehearing in Bank was denied, January 19, 1900, upon which the following dissenting opinion was rendered:

BEATTY, C. J.—I dissent from the order denying a rehearing of this case because, in my opinion, the decision rests necessarily upon a doctrine destructive of essential safeguards of important public rights.   The essence of the decision is that a contract, void for want of compliance with the conditions and limitations upon and under which alone boards of supervisors have power to bind their counties, acquires all the force and obligation of a valid contract if the contractor commences work and expends money in pursuance of its terms before he is notified that the county repudiates it.   This doctrine sweeps away at once all limitations upon the power of the board, for it can readily be seen that the contractor must always have it in his power to commence work just as soon as he has induced the board to enter into a contract in defiance of the regulations intended to govern their action; and it is also apparent that the board which desires to make contracts in disregard of the law will have the same motive to allow the commencement of work that they have to enter into the illegal contract.

And how can the equitable doctrine of estoppel apply in such a case against the public?   The facts are all known to the contractor.   There has been no misrepresentation, no concealment. He knows what the contract is and how it has been obtained.   If it is illegal and void he knows it, and if he goes to work under

it he does so with his eyes open. In such case there can be no estoppel.

The expression quoted in the Department opinion from *Argenti v. San Francisco*, 16 Cal. 266, was never the law even of that case. It was but the opinion of à single judge, not concurred in by his associates and expressly repudiated by him in the later case of *Zottman v. San Francisco*, 20 Cal. 109, 81 Am. Dec. 96, where he lays down the doctrine which this case sets aside. It is true that some decisions have been made in other jurisdictions which sustain the present ruling here, but it is certainly opposed to the views which have heretofore prevailed in this court, and to the weight of authority elsewhere.

The judgment of the superior court should have been affirmed.