[L. A. No. 802.   Department Two.—December 19, 1899.]

In the Matter of the Estate of STEPHEN SILVANY, Deceased.

WILL—SUBSCRIPTION—EVIDENCE.—The verdict of the jury, finding that the will in question was never subscribed by the alleged testator, held justified by the evidence.

APPEAL from a judgment of the Superior Court of Los Angeles County and from an order refusing a new trial. W. H. Clark, Judge.

The facts are stated in the opinion of the court.

W. A. Harris, Harris & Garrett, and Augustus A. Montano, for Appellants.

Z. Montgomery, and J. W. MacDonald, for Respondents.

TEMPLE, J.—Stephen Silvany died January 10, 1898, and on the 28th of January, 1898, the superior court of Los Angeles county admitted to probate what purported to be his last will, being dated January 8, 1898. It was probated upon the petition of Francisco Quijada. The petitioner and his illegitimate

son, Jesus Quijada, were the sole beneficiaries under the will, and one L. C. Flores was named therein as the executor.

Within one year thereafter, but precisely when does not appear, certain parties inaugurated a contest in the superior court by filing a petition alleging that the decedent left a will dated March 6, 1891, in which certain of the petitioners were named as executors. In that will all the property of the testator, except five hundred dollars, was left to Francis Mora in trust for the erection and maintenance at Los Angeles of a Catholic female orphan asylum. In that petition the probate of the other will was averred, but it was charged that it was, in fact, never published or executed by Silvany, but was fraudulently concocted in pursuance and furtherance of a scheme to defraud the estate of Silvany out of all the property owned by Silvany. It was also charged that at the time of the alleged making and publishing of said will of 1898 the testator was of unsound mind and subject to undue influence from said Francisco Quijada.

An answer was interposed to the petition and a contest had. The due execution of the will of 1891 was not really disputed. As to the will of 1898 several special issues were submitted to the jury, to only one of which response was made. That was as follows: "Did the deceased, Stephen Silvany, subscribe the contested will himself? A. No."

Upon this verdict the court made an order setting aside the probate of the will of 1898, and revoked the letters issued to Flores, and admitted to probate the will of 1891.

The appellant makes here but the single point that the evidence does not justify the verdict. The proposition is urged with great force and earnestness, and we have carefully read and considered the evidence in connection with the argument. We cannot say that there was not sufficient evidence to justify the verdict.

It is not a case where admittedly a will was made which the alleged testator intended to make, but which, it is charged, he was induced to make through fraud or undue influence. The verdict is to the effect that Silvany did not make the will at all. It must also be borne in mind that it is within the province of the jury to determine the credibility of the witnesses. The jury doubtless believed the testimony of Juan B. Sanchez

and Gonzales, notwithstanding the assaults made upon their credibility, and disbelieved the counter-statements of Quijada and others. This court will not ordinarily review the conclusion of the jury upon that subject. Upon that basis there certainly were reasons to doubt the honesty and fairness of Quijada and Flores in the matter. Quijada persistently and even indecently urged and insisted that Silvany should make a will in his favor. The sick man was taken, against the protests of his physician and nurse, to the home of the former mistress of Quijada, the mother of the only other beneficiary of the contested will, when he was so ill that the removal was imprudent and dangerous, but still Silvany resisted the importunities of Quijada to make a will in his favor. Quijada twice brought persons to the house for the purpose of preparing the will. Both times Silvany declined to make the will and once expressed a wish to be taken away from there, saying that they were robbing him, while Quijada accused Silvany of ingratitude for his refusal to make a will favorable to him. Silvany always said he had given his property to the orphans.

And, then, there is Quijada's statement of how the will was prepared and executed, notwithstanding Silvany's persistent refusal to comply with his importunities. On January 7th, "about 4 o'clock, my *compadre* said that he was very sick, and he wanted to make a will." He also told Quijada that he would give certain land to his son Jesus, and the balance of his estate to Quijada, and asked if he liked Flores as administrator, to which Quijada assented, and then Silvany said, "We will put him as administrator and at the same time without bonds." They agreed upon that, and Quijada went to a lawyer and asked him to prepare the will. The lawyer said he would prepare it and meet him with it the next day at Flores' saloon. The next day the lawyer met him at Flores' saloon and read it to Quijada to see if it was as Silvany ordered, and said, "Here is Jesus Quijada with a house, and all the rest is for you. Here is also Flores administrator."

The next day Silvany, being very sick, sent for Flores and Quijada's son Severiano. Assembled at the house there were, besides Silvany, Francisco Quijada, his mistress, Flores, and Severiano.

Then Silvany asked Flores to read the will, which he did in Spanish and English. Then Silvany said, "That's my will, you sign my name to it." Then Flores wrote something and took the paper and a pen to Silvany, who took the tip of the pen and a cross was made. Then "my *compadre* told Mr. Flores to write his name as a witness to the will," which was done. "Then my *compadre* called Severiano, . . . . and told him that was his will and to write his name as a witness to it," which was done. "My *compadre* told Mr. Flores to hand the paper to me, which he did, and my *compadre* told me to take care of it, that that was his will." The dying Silvany, uninstructed and without prompting, went through the entire ceremony of the execution and publication of the will just as a lawyer, if present, would have directed, not only omitting no requisite, but everything is done in due order, and it was no small feat for the witness, who has long resided at Los Angeles, but cannot speak English, to recite it so completely and in order. And it was thoughtful on the part of Silvany, who, according to the witness, had consulted no one in regard to the will, of his own motion to suggest that no bond be required of Flores. Otherwise Flores would not have been able to qualify.

But while we can but wonder that all these things were so well done by those from whom we should least have expected it, we are unable to compliment the attorney who drew the will in the same way. He received his instructions as to writing the will solely from one who was practically to get the entire estate under the will. It does not seem to have occurred to him that it would be a proper thing for him to see the proposed testator, to make sure that he wanted to make a will at all, or such a will. And after the will was prepared he did not think it necessary that he should read and explain it to the testator to satisfy himself that it expressed the real wish of the testator. This was quite out of the ordinary course. But the attorney by appointment went to a saloon, kept by the person who was named as executor without bonds, to read it to the devisee to whom practically the whole estate was left by the will, to learn from him whether it was such a will as the testator wished.

For all this the will may have been an honest will, but if it had been designed to force its execution upon Silvany, or to

forge a will, the course taken was the precise course which might have been adopted. If Silvany was alive and desired to make the disposition of his property, it is strange that the attorney did not ask permission to see him, and was not asked to attend to the execution of the will.

There are other circumstances as much relied upon by the contestants, but these considerations are sufficient to show that the verdict cannot be set aside for lack of evidence.

The order and judgment appealed from are affirmed.

Henshaw, J., and McFarland, J., concurred.