[S. F. No. 3123.   In Bank.—June 23, 1903.]

## CONTRA COSTA WATER COMPANY, Respondent, v. A. H. BREED, Auditor of City of Oakland, Appellant.

WATER RATES—ORDINANCE—WATER USED BY CITY—CONSTRUCTION OF
OAKLAND CHARTER.—Water rates under the constitution are re-
quired to be fixed by ordinance; and water used by the city of
Oakland does not fall within the provision of its charter concerning
the letting of contracts for supplies to the lowest bidder.

ID.—MANDAMUS—CITY WATER SUPPLY—DISCRETION OF AUDITOR—RE-
JECTION AFTER ALLOWANCE.—Where claims against the city for
water supplied thereto were presented to the auditor, and by him ·
rejected, and were afterwards allowed by the city council and
board of public works, and approved by the mayor, and again pre-
sented to the auditor and rejected, the discretionary powers of the
auditor to reject has been exhausted, and *mandamus* will lie to
compel the performance of his duty to audit the claims, if they
were properly chargeable against the city.

ID.—ORDINANCE FIXING RATES—INJUNCTION SUIT BY WATER COM-
PANY—APPEAL BY CITY—SUPPLY PENDING LITIGATION.—Where the
execution of a city ordinance fixing rates for the current year was
enjoined at suit of the water company, and the city had appealed
from a decree in favor of the water company, and the water com-
pany had continued to supply the city with water pending the
litigation, the city had the right to pay the water company there-
for at rates agreed upon, not exceeding those fixed by the ordi-
nance.

ID.—ESTOPPEL OF MUNICIPALITY—RECEPTION OF BENEFIT—GENERAL
SCOPE OF AUTHORITY.—Where the city council, having general au-
thority to provide for furnishing the city with water, received and
retained the benefit of a water supply, although there was no pre-
vious express contract as to the price, the city is liable in *assumpsit*
for its reasonable value, and is estopped to deny the validity of
the claim, on the ground that it had not passed a lawful ordinance
therefor. [*Per* McFarland, J., and Lorigan, J.  Beatty, C. J., dis-
senting; and Angellotti, J., Shaw, J., and Van Dyke, J., expressing
no opinion.]

ID.—FORFEITURE OF FRANCHISES—CONSTRUCTION OF CONSTITUTION.—
The constitutional provision declaring that a person or water com-
pany collecting water rates "otherwise than as so established,"
shall forfeit its franchises and property, is to be construed as mean-
ing contrary to, or in violation of, the established rates.  The
law abhors a forfeiture; and it will not be declared, if the lan-
guage admits of a fair and reasonable construction to the con-
trary.

APPEAL from a judgment of the Superior Court of Alameda County. John Ellsworth, Judge.

The facts are stated in the opinion of the court.

Guy C. Earl, for Appellant.

Page, McCutchen, Harding & Knight, Edward J. McCutchen, and Reed & Nusbaumer, for Respondent.

McFARLAND, J.—This is a proceeding in *mandamus*, instituted in the superior court to obtain a writ of mandate compelling the defendant, as auditor of the city of Oakland, to audit and draw his warrant for certain claims of plaintiff against said city. A demurrer to the complaint was overruled; and after answer by defendant judgment was rendered for plaintiff on the pleadings. From this judgment defendant appeals.

We see no good reason for disturbing the judgment of the court below. The claims of respondent are for water furnished the city of Oakland, and hydrants and materials used in connection with the furnishing of such water, during the fiscal year commencing July 1, 1900. Appellant makes some technical points not involving the ultimate merits of the case, which we do not deem it necessary to specially notice; it is enough to say as to those points that it sufficiently appears that after the claims here involved had been presented to and rejected by the appellant, they were approved and allowed by a majority of the members of the city council, as well as by a majority of the members of the board of works of the city, and approved by the mayor, and that thereafter they were again presented to the appellant as auditor, and were by him again rejected. This being so, the discretionary power of appellant to reject the claims had been exhausted, and it was his ministerial duty to audit and draw his warrants for the claims, unless they were for expenditures which the council had no right at all to incur under the law. This is the rule, as stated in section 10 of the charter of the city of Oakland, the exception there being in these words: "Provided, the said city council, board, or other body had the authority to make the expenditures." The main question in the case, therefore,

CXXXIX. Cal.—28

is whether the city council had authority to make the expenditures involved in the case at bar. (See *San Francisco Gas Light Co.* v. *Dunn*, 62 Cal. 580.)

The litigation in this case arose out of facts likely to occur in any case where the furnishing of water to a municipality is subject to the provisions of article XIV of the state constitution. That article provides that in such case the council or other governing body of the municipality, by ordinance or resolution in February of each year (or, at least, before the beginning of the next fiscal year), shall fix the rates which the party furnishing the water shall be entitled to charge during such fiscal year. When the governing body is composed of quite a large number of persons,—as is usually the case,—it may happen that a majority of such persons cannot conscientiously agree upon one entire schedule of rates; so that at the commencement of the fiscal year the rates will not have been fixed. This condition may also be the result of other causes. Water, of course, is a constant and absolute necessity to a city and to its inhabitants, and a present supply can usually be had only from the persons theretofore engaged in supplying the particular city in question and having the requisite plant and water. Under these circumstances it is not to be supposed that there are no means by which the city or its inhabitants may get the necessary water, except by inducing the water company to furnish it and then refusing to pay for it—unless the law absolutely compels such conclusion. In the case at bar the city council had on March 26, 1900, passed an ordinance fixing the water rates for the fiscal year commencing July 1, 1900; but, as the result of litigation instituted by respondent, the superior court judicially determined that such ordinance was invalid, and enjoined the city from enforcing it. An appeal was taken from this judgment, which is still pending. But during that year the respondent did actually furnish to the city water, the reasonable value of which is involved in this litigation, and the city continuously received the same, and used it, and had the full benefit thereof, although there was no previous express contract as to its price. The respondent afterward proposed, as a compromise, to take as a compensation for the first ten months of the fiscal year the rates which had been prescribed in the said ordinance which had been de-

clared invalid, notwithstanding its claim that those rates were unreasonably low, and to remit its water rates for the last two months of that year and donate them to the high-school fund of the city. The city council on July 15, 1901, passed an ordinance, which was approved by the mayor, reciting these facts, determining that the claims of the respondent were for reasonable rates, and declaring that the claims and demands of respondent "are hereby ratified, confirmed, allowed, and approved, and ordered paid, in the sum and amount shown and set forth in each of said claims and demands." But the contention of appellant is, substantially, that the council had no power to allow these claims; that the city should repudiate payment for what she had received and used, and in good conscience and honest fair dealing ought to pay for, because a contract for the same had not been made in accordance with certain provisions of the city charter and of existing ordinances. The attitude of appellant then is this: that notwithstanding the fact that the company supplied the city with water, and seeks to recover for its service at a rate and price less than that which the city itself by its rate-fixing ordinance had declared reasonable, it ought to be denied any recovery. The provisions of the charter and ordinances mainly relied on for this contention are section 1 of an ordinance passed February 23, 1895, and attached to appellant's answer, and certain sections of the charter which provide for letting contracts for certain kinds of supplies to the lowest bidder, after published proposals, to be followed by a written contract, countersigned by the auditor. Section 1 of said ordinance is as follows: "Whenever any court, board, or officer of the city of Oakland shall require furniture, fuel, books or stationery, or other supplies of any kind necessary for the transaction of public business or for the maintenance of the departments of the city government, said court, board, or officer of the city shall make written requisition therefor upon a printed form furnished by the auditor. Said requisition shall state in clear and explicit terms the quantity and kind of supplies needed, the estimated cost thereof, how, when, and where to be delivered, and, if a contract exists, the name of the person, firm, or corporation under contract with the city to furnish the same." It is quite apparent that water to be supplied to a city in quantities

such as necessity may from time to time require is not within the category of ''furniture, fuel, books or stationery, or other supplies,'' which a department of government needs, and for which a requisition must be made, stating in clear and explicit language ''the quantity and kind'' and the ''estimated cost,'' etc. Those things are, with respect to water, within the constitutional provision which declares that the city council must determine the cost by establishing rates by ordinance; and to such matters the provision of the charter about letting contracts to the lowest bidder has no applicability.

We see no other provisions of the charter, or ordinance, or law, which undertakes to prohibit the city council from allowing and ordering paid the reasonable value of water furnished under the circumstances of this case. The city council clearly had the general power to provide for the furnishing of the supply of water necessary for the city, whatever the contention may be about the manner in which the contract for such supply ought to be made. And even if it could be shown that certain provisions of the charter or ordinances were not strictly complied with, the city, under well-settled legal principles, would not be allowed to accept and use and receive and retain constantly for a year the benefit of respondent's property, and then refuse to pay for it upon the plea that in making the contract it had not proceeded in strict conformity with some part of the complicated internal machinery of its complex corporate organization. When a municipal corporation engages in ordinary business transactions, such as purchasing supplies, it exercises merely the right of a private corporation or a natural person; and when making contracts about such matters it is not to be regarded as exercising political or governmental powers, and, like natural persons, it is subject to the principle that after it has received the benefit of a contract within the scope of its power to make, it is estopped from denying its validity in an action based upon such contract. It is only when the subject-matter of the contract is entirely outside the scope of the corporate powers, or the contract in question is clearly prohibited, that the plea of *ultra vires* will be listened to. The law upon the question is correctly stated in *Argenti* v. *San Francisco*, 16 Cal. 256, where the defendant sought to avoid paying for what she had received, on account of irregularity in the contract and

want of power under its charter. The court, after some preliminary discussion as to the correct construction of the charter there involved, said: "But even if we are mistaken in our construction of the charter, there is still a clear and conclusive answer to both of these objections. It is well settled in relation to the contracts of corporations that where the question is one of capacity or authority to contract, arising either on a question of regularity of organization or of power conferred by the charter, a party who has had the benefit of the contract cannot be permitted, in an action founded upon it, to question its validity. 'It would be in the highest degree inequitable and unjust,' says Mr. Sedgwick, 'to permit the defendant to repudiate a contract, the fruit of which he retains,'—citing many other authorities to the point." Further on the court says: "It is well settled that the contracts of corporations stand upon the same footing as those of natural persons, and depend upon the same circumstances for their validity and effect. The doctrine of ratification and estoppel is as applicable to corporations as to individuals, and the former are bound by the acts of their agents in the same manner and to the same extent as the latter. There is no difference in this respect between public and private corporations; for in matters of contract a public corporation is regarded merely as a legal individual, and treated in all respects as a private person." And again the court says: "It does not follow, however, that even a want of authority is in all cases a sufficient test of the exemption of a corporation from liability in matters of contract. Of course, an executory contract made without authority cannot be enforced; but a different question arises where the contract has been executed and the corporation has received the benefit of it. In such a case the law interposes an estoppel, and will not permit the validity of the contract to be called in question." In the still earlier case of *Touchard* v. *Touchard,* 5 Cal. 307, the court says: "On the other hand, a corporation, both by the civil and the common law, is a person, an artificial person; and although a municipal corporation has delegated to it certain powers of government, it is only with reference to those delegated powers that it will be regarded as a government. In reference to all other of its transactions, such as affect its ownership in buying, selling, or granting, and in reference

to all matters of contract, it must be looked upon and treated as a private person, and its contracts construed in the same manner and with like effect as those of natural persons." In *San Francisco Gas Co.* v. *San Francisco,* 9 Cal. 453, the plaintiff had furnished the city with gas, and the city sought to escape payment on account of irregularity of contract. Field, J. said: "Under some circumstances a municipal corporation may become liable by implication. The obligation to do justice rests equally upon it as upon an individual. It cannot avail itself of the property or labor of a party and screen itself from responsibility under the plea that it never passed an ordinance on the subject. As against individuals, the law implies a promise to pay in such cases, and the implication extends equally against corporations. This is as well established by the authorities as any principle of law can be."

It is contended that the weight of the authorities above cited was lessened by the case of *Zottman* v. *San Francisco,* 20 Cal. 96.[1] The facts in that case were materially different from those in the case at bar. In that case the plaintiff had entered into a contract with the city to construct an iron fence around a public square according to certain specifications. This contract had been made on the part of the city by ordinance, in accordance with an express provision of its charter that all contracts for "public improvements" should be made by ordinance. The contract called for a wooden base for the fence, and failed to provide for painting it. Afterwards some individual members of the council ordered plaintiff to do such additional work. The city council never approved the claims for extra work, nor in any way recognized, audited, or ordered them paid. The plaintiff's case rested entirely upon the claim that although the city had neither ordered nor ratified nor approved the work, still it must be presumed to have known that it was being done, and to have accepted it, and therefore to have made itself liable for its reasonable value. The court held, however, that the fact that the city had not removed this one isolated addition to its land did not bring it within the rule that one who accepts the benefit of a contract cannot repudiate it. In illustration of this, the court said: "Thus, if one person should erect a

---

[1] 81 Am. Dec. 96, and note.

cottage or stable upon the land of another without request, the conduct of the architect could not be affected by a refusal of the owner of the land to accept the building. The architect could not, upon such refusal, remove the building, it having become attached to and part of the freehold; nor would the owner of the land be deemed to have accepted the building merely because he had not chosen to tear it down, or had seen fit to use it in connection with his land. From the necessity of the case, the owner receives the benefit of the building by reason of his right in the soil, and not from any supposed acceptance, without subjecting himself to any obligation of payment. So, too, in the present case, from necessity, the corporation received the benefit of the stone base to the iron fence around Portsmouth Square, and of the painting of the iron fence, without incurring any liability therefor.'' Moreover, the court held in that case that the city council had absolutely no authority to make the alleged contract on account of ''the restrictions imposed by the charter upon their powers.'' Now, in the case at bar there are several marked differences from the Zottman case. In the first place, in this case the city council, in its corporate capacity, did absolutely approve respondent's claims and ordered them paid. In the second place, there were here no ''restrictions imposed by the charter'' absolutely prohibiting the action of the city council here involved. And, again, there was in the case at bar not merely one isolated addition to the real property of the city which the latter was not compelled to remove in order to show its want of consent; there was a continuous reception and beneficial use of the water furnished by the respondent daily and hourly throughout an entire year. It may be conceded, however, that there are expressions in the opinion in the Zottman case somewhat at variance with the former cases above referred to; but they are also at variance with subsequent decisions of this court which, we think, fully recognize the principle declared in the earlier cases. Among those subsequent cases are the following: In *Brown* v. *Board of Education*, 103 Cal. 530, an action to recover the value of certain plans and specifications, the court said: ''With respect to mere ordinary business contracts a municipal or quasi-municipal corporation stands on the same footing with other corporations. If a contract for the drawing of plans and

specifications in anticipation of proceedings for the building of a schoolhouse was entirely beyond the scope of the powers of the respondent, and could not be legally made by it under any conceivable circumstances, then the point sought to be made by the respondent might perhaps be raised on demurrer; but the position that respondent could not, under any circumstances, make such a contract is not tenable. . . . 'Corporations may be bound by implied contracts within the scope of their authority,' and 'municipal corporations are liable to actions of implied *assumpsit.*' " In *Higgins* v. *San Diego Water Co.,* 118 Cal. 524, this court held that while a certain contract with the water company for supplying water to the city of San Diego was, for reasons stated, invalid, yet the company was entitled to recover reasonable compensation for what had been furnished to and used by the city. Beatty, C. J., in delivering the opinion of the court, on page 555, said: "But the city had the general power to contract for a water supply for itself and its inhabitants, and under this power could undoubtedly have taken a lease of the water company's plant for a year, and could have renewed such lease from year to year. In effect, it has done this very thing. Its express contract to pay nine thousand one hundred and sixty-six dollars and sixty-five cents was invalid for the reasons above stated; but there is no reason why it should not pay the reasonable value of the use of the plant which it has actually enjoyed. The decisions cited by counsel for appellant from the reports of other states very clearly sustain his contention in this respect, and so we think do the decisions of this court. We cite the following:" And among the cases cited are *San Francisco Gas Co.* v. *San Francisco,* and the Argenti case, hereinbefore noticed, as well as the Zottman case. In *Sacramento County* v. *Southern Pacific Co.,* 127 Cal. 217, the plaintiff was endeavoring to evade the obligation to pay for what it had accepted and used, on account of irregularity and invalidity in the contract involved; but this court held adversely to that contention. The court, after a full consideration of the authorities and copious quotations therefrom, said: "From these authorities, and many others which might be cited, it is apparent that public corporations, like individuals, are bound to act in good faith and deal justly; that they cannot be allowed to enter into contracts involving others

in expensive engagements, silently permit these contracts to be executed, and then repudiate them because the statutory steps have not been pursued in the letting of the contracts.'' There are other decisions of this court to the same effect, and many of courts of other states. (See *Brown* v. *City of Atchison,* 39 Kan. 37;[1] *Grand Island Gas Co.* v. *West,* 28 Neb. 852, and *Township of Taymouth* v. *Koehler,* 35 Mich. 22—in all of which cases the Argenti case is cited with approval.)    Cases which are cited to the contrary of this rule are generally cases where the contract in question was either entirely beyond the scope of the corporate powers or was expressly prohibited.

Appellant makes the point that respondent cannot maintain this action, because under article XIV of the state constitution it had forfeited all its franchises and property.    It is doubtful if this point can be raised, except in direct proceeding to have forfeiture declared; but even in such a direct proceeding, whatever views a court might entertain in other respects as to the character of said article XIV, no forfeiture would be declared under it unless its language clearly demanded it.    Section 1 of that article imposes the duty upon the governing body of a municipality to annually establish the rates to be charged for water, and declares that any person or company collecting water rates ''otherwise than as so established'' shall forfeit its franchises and water-works. Clearly, that language would not be construed as working a forfeiture, if susceptible of any fair, reasonable construction which would not lead to that harsh result, which the law abhors; and it is obviously susceptible of the construction that it refers to a case where the rates had been established by the governing body, and that the word ''otherwise'' is to be given one of its usual meanings,—namely, ''contrarily,''— in violation of the established rates.    An expression to be found in the opinion of the court in *Jacobs* v. *Supervisors,* 100 Cal. 121, and referred to by counsel, had no reference whatever to the subject of forfeiture; it was used incidentally in reference to an entirely different subject, and is not to be taken as declaring the law upon the point here under discussion, which was not before the court in that case—the question there being whether, under the old charter of San Francisco, the mayor had legal authority to veto the water

[1] 7 Am. St. Rep. 515.

ordinance. But in *Culbertson* v. *Kinevan,* 73 Cal. 68, where forfeiture was directly involved, the decision was, in principle, clearly adverse to appellant's contention.

For the reasons above stated, we think that the conclusion of the learned judge of the court below was right, and should be maintained.

The judgment appealed from is affirmed.

Lorigan, J., concurred.

ANGELLOTTI, J., concurring.—I concur in the judgment and in that portion of the opinion of Mr. Justice McFarland as to the inapplicability of the provisions of the Oakland charter relative to requisitions inviting sealed proposals and the awarding of the contract to the lowest bidder. These provisions of the charter cannot reasonably be construed as being intended to include the water supply of the municipality. Upon this point our constitutional provisions are a full and conclusive answer to the contention of appellant. Under section 1 of article XIV of the constitution the rates or compensation to be collected by any person, company, or corporation for the use of water supplied to the city of Oakland must be fixed annually by the city council of that municipality, and the person or corporation furnishing water is forbidden to collect water rates "otherwise than as so established." The matter of the rates to be paid is therefore entirely within the control of the municipality, at least so long as the rates fixed are not unreasonable, and could not have been intended to be a matter for competitive bidding. The object of the charter provisions is obvious. They were enacted, as was said of similar provisions in *Harlem Gas Co.* v. *Mayor,* 33 N. Y. 309, 329, "to insure economy and exclude favoritism and competition in the furnishing of labor, services, property, and materials for the uses of the city." This was the only purpose; and regardless of the question as to whether or not a municipality could, in the face of such a constitutional provision as ours, make such charter provisions applicable to the matter of a water supply, it is plain that it does not fall within the objects and purposes of those provisions, and could not have been intended to be included therein. The various items of plaintiff's claim, except a few for erecting

and setting fire-hydrants and repairing same, no one of which amounts to fifty dollars, are for water furnished the city of Oakland for municipal purposes. An examination of the pleadings will demonstrate that the various items denominated "Rental of Fire Hydrants" are simply the charges for the maintenance of a water supply for fire purposes at the various hydrants throughout the city, doubtless at the rate fixed by the city council.

The principal question presented by this appeal is as to the effect of the proceeding instituted by respondent to enjoin the enforcement by the city of Oakland of the ordinance fixing the rates to be charged, on the ground that the same were unreasonable. At the commencement of that proceeding a temporary injunction was granted restraining the city and its council from enforcing the ordinance or the rates therein fixed or any forfeiture of respondent's franchise or works for failure to comply with said ordinance. Judgment was entered in said action after the close of the fiscal year 1900-1901, declaring said ordinance null and void, and perpetually enjoining the city council from enforcing the same. From this judgment the city of Oakland has appealed to this court, and the appeal is still pending undetermined. Appellant's contention is, that pending the final determination of that proceeding, and thereafter, in the event that the judgment be affirmed, until the adoption of the new ordinance fixing rates for the year 1900-1901, the respondent cannot collect rates at all; that it cannot collect any rates fixed by an ordinance, the enforcement of which it has caused to be enjoined, and that it can collect no rates in the absence of a valid ordinance fixing the same. It seems to me to be unnecessary to here determine what the situation would be if no rates had been fixed for the year 1900-1901. That question, in view of our constitutional provisions, is a most difficult one, and its final determination should not be embarrassed by expressions of opinion not essential to the decision of this case. Therefore, I do not wish to be understood as concurring in that portion of the opinion of Mr. Justice McFarland which intimates that in the absence of any fixing of rates, the city would be liable for the reasonable value of the water furnished, or as expressing any opinion thereon. As a matter of fact, the city council did, by ordinance, fix the rates to be charged for the

year 1900-1901. The claims of respondent which have been allowed are in all respects in accord with the rates so fixed, except that, by way of compromise, respondent has charged the city with the water furnished during ten months of the year only, withdrawing the claim for the other two months.

The ordinance fixing the rates has not been finally determined to be invalid, and we do not know that it ever will be. Before the time for appeal in the suit brought to determine its invalidity had elapsed, the city perfected its appeal to this court, and that appeal is still pending. In view of the fact that the judgment in that proceeding has not become final, such judgment has not materially affected the situation. Nor can I see that the institution and maintenance of that proceeding by respondent, and the obtaining of the temporary injunction already referred to, estop respondent from collecting during the pendency of the proceeding the rates fixed by the ordinance. It might with as much force be contended that the city, defending against said proceeding and maintaining an appeal to this court, upon the ground that the ordinance is valid, is also estopped from asserting its invalidity. The respondent had the right to present to the courts its contention that the city was, by placing the rates unreasonably low, confiscating its property, and the city had the right to resist this attack upon its action, and to show that the ordinance was valid. The mere fact that such an action has been instituted and is being maintained by a water company that considers that its legal rights have been invaded, for the purpose of obtaining a legal determination in the tribunals of the country as to the validity of the action of the city, should not be held to prevent that company from collecting during a long and protracted period of litigation, for water furnished by it, and received by consumers, at least to the extent to which it is conceded by the consumers, through the body fixing the rates, it is entitled to charge, unless such holding is absolutely essential. I know of no principle of law that requires such a ruling to be made. There is no contention in such a case that the rates so fixed are unreasonable, so far as the city or the ratepayers are concerned. As to them, it must necessarily be conceded that the water company is entitled to charge as much as the rate-fixing body has determined to be a proper rate, and so long as no higher rate

is collected, the whole object of the constitutional provisions has been attained. Exactly what is the effect of an injunction in such a proceeding, restraining the city and its council from enforcing the ordinance or the rates therein fixed, or any forfeiture of the company's franchise for failure to comply with the ordinance, it is unnecessary to here determine. Whatever be the effect thereof, I know of no reason why it should be held to prevent the company from charging for water furnished the rates fixed by the ordinance, until it be finally determined that the ordinance is void. And, while I am very doubtful as to the right of the company pending such final determination, to collect any higher rates than those specified in the ordinance, I am of the opinion that it is entitled to collect the rates so specified.

I agree with Mr. Justice McFarland that the claims were allowed by the board of works after their rejection by the auditor. It is very clear that if the language used by the board in the preamble and resolution relative to the allowance of these claims is to be given any force at all, it simply means that the board did not desire by its allowance to prejudice any defense that might be made by the city of Oakland *through the auditor.* The preamble shows that the auditor's objections to the claims were that the same were "illegal and unauthorized," and that the board had learned that none of said claims is based upon any written contract, and doubts the legality and validity of said claims.

The other defenses urged were not, in my judgment, available to the auditor, who is confined to such matters as go to the jurisdiction of the board to make the expenditure.

Shaw, J., and Van Dyke, J., concurred with Angellotti, J.

BEATTY, C. J., concurring.—Except as to a portion of plaintiff's claim, amounting to about two hundred dollars for items not falling under the head of water supplies, I concur in the opinion of Justice Angellotti upon the points therein discussed, and, except as to this comparatively trifling amount, I concur in the judgment. I concur entirely in the view that rent of fire-hydrants is to be understood as another name for water rates, and is among the things to be regulated by the ordinance fixing the annual rates to water-takers, including the municipality. With respect to water supplies, the

provisions of the city charter regulating the mode of entering into contracts have no application. The city fixes the rates, and of necessity there can be no competition of bidders as to prices. The city also determines for itself how much water it will take, and as to that there can be no competition. As to the great bulk of the plaintiff's claim, therefore, the mode of contracting prescribed by the charter requires no consideration. But as to the small portion of plaintiff's claim for other supplies these charter provisions do control, and I am not fully persuaded that Justice Angellotti's opinion meets the objections of appellant. In Justice McFarland's opinion they are met by a reaffirmance of the doctrine of estoppel, announced in the opinion of Justice Cope in *Argenti* v. *San Francisco,* 16 Cal. 265.

That is a doctrine to which I have never subscribed, and which I had supposed was finally laid at rest in this court. I particularly object, therefore, to being quoted in approval of it. In the opinion of Justice McFarland it is said that I cited the Argenti case in support of my opinion in *Higgins* v. *San Diego Water Co.,* 118 Cal. 524. This is true; but a reference to my opinion in that case (*San Diego Water Co.* v. *City of San Diego,* 118 Cal. 556[1]) will show that I was particular to refer, not to the opinion of Justice Cope, from which Justice McFarland makes his quotation, but to the opinion of Justice Field, who expressly dissented from the views of Justice Cope. It is true, also, that in *Sacramento County* v. *Southern Pacific Co.,* 127 Cal. 217, the doctrine of estoppel, as applied to cases like this, was again asserted upon the authority of Justice Cope's opinion in *Argenti* v. *San Francisco,* from which a long quotation was made in the opinion as filed and as originally reported. (59 Pac. 570.) But in my dissenting opinion in that case (127 Cal. 226) I called attention to the fact that the expressions quoted from *Argenti* v. *San Francisco,* 16 Cal. 256, had never been the law even of that case; that it was but the opinion of a single judge, not concurred in by either of his associates, and deliberately renounced by him in the subsequent case of *Zottman* v. *San Francisco,* 20 Cal. 96.[2] In consequence, I suppose, of this criticism, all reference to *Argenti* v. *San Francisco* was stricken out of the opinion in *Sacramento* v. *Southern Pacific Co.*

---

[1] 62 Am. St. Rep. 261.          [2] 81 Am. Dec. 96, and note.

when it came to be reported (127 Cal. 222), and for the same reason, when the case of *Croley* v. *California Pacific Co.*, 134 Cal. 557,—a case involving a second installment, claimed under the same contract, and presenting the same questions,— came here for review, it was decided upon an entirely different ground, and the doctrine of the Argenti case never so much as alluded to, although pressed upon the attention of the court under the claim that it had become the very law of the case by virtue of the former decision.

As to what was decided in *Higgins* v. *San Diego Water Co.*, 118 Cal. 524, it is clear that upon Justice Cope's doctrine of estoppel the city would have been held liable on the written contract, for it had been fully complied with by the water company, and the city had enjoyed all the benefits for which it had stipulated. But we held the written contract to be invalid, because violative of the constitution and city charter, and allowed a recovery only upon the *quantum valebat* count upon an implied contract, which was in no wise in conflict with the constitution, and lacked conformity to the city charter only in respect to a provision designed for the protection, not of the city itself, but of prior contractors, to whose earlier and valid claims the revenues of the city had been already pledged. It was not considered that under this provision of its charter the city could resist a judgment limited in amount to the actual value of what it had received and payable only out of its unappropriated revenues. Entertaining these views, I could not concur in that portion of the judgment which in my opinion depends upon the doctrine of estoppel as stated in the Argenti case.

Besides the points discussed in the foregoing opinions of McFarland and Angellotti, JJ., there are other assignments of error involving propositions which, both on account of their importance and the earnestness with which they have been pressed in the argument, deserve a fuller consideration than they have received; but I could not make a satisfactory statement of my views upon those matters without delaying too long the decision already reached by a majority of the court, and I must content myself by saying that I concur in the conclusions of my associates upon those points.