[No. 47.   Third Appellate District.—August 23, 1905.]

## W. A. FOUNTAIN, Appellant, v. CITY OF SACRAMENTO, Respondent.

CONVERSION—WAIVER OF TORT—ASSUMPSIT.—Where personal property has been wrongfully taken and converted, the owner has his election to sue in tort for the conversion or he may waive the tort and sue in *assumpsit,* on an implied contract to pay the reasonable value of the property.

MUNICIPAL CORPORATIONS—SACRAMENTO—ILLEGAL CONTRACT—ESTOPPEL. —The city of Sacramento, the charter of which forbids it from entering into any kind of a contract for the expenditure of more than one hundred dollars unless authorized by a vote of the board of trustees, given in the manner therein provided, is not estopped to dispute its liability for materials of a greater value than one hundred dollars furnished to the city at the mere request of one of its trustees, although such materials were used by it for a municipal purpose, and it had previously paid for materials of a less value than one hundred dollars similarly ordered and used.

ID.—KNOWLEDGE OF CHARTER PROVISIONS.—One who furnishes materials to a municipal corporation is charged with knowledge of its charter provisions in force at the time.

APPEAL from a judgment of the Superior Court of Sacramento County.   J. W. Hughes, Judge.

The facts are stated in the opinion of the court.

White & Miller, for Appellant.

Hiram W. Johnson, A. A. De Ligne, and D. L. Donnelly, for Respondent.

CHIPMAN, P. J.—The action is for the value of forty-four thousand bricks alleged to have been sold and delivered to defendant by plaintiff, of the value of four hundred and forty dollars.   A claim was presented to defendant by plaintiff, after the bricks had been used by defendant, demanding payment, which set forth the wrongful taking from plaintiff and conversion by defendant of the said bricks; this claim was rejected and thereupon plaintiff brought the action.   The court found that plaintiff, at the request of C. W. Paine, one of the trustees of defendant, delivered a lot of bricks at the city cemetery which this trustee told him were to be used in

building a wall around a portion of said cemetery, and that from the representations made to him by the trustee at the time, plaintiff understood that the bricks were being sold by plaintiff to defendant, and that defendant would pay for them; that there were fifty-three thousand bricks worth ten dollars per thousand, and that plaintiff presented a claim for nine thousand, and this claim was allowed and paid; that the bricks unpaid for were actually used by defendant in constructing said wall and still remain there; that "no express contract was made between plaintiff and defendant, nor did the board of trustees of defendant take any action whatever in relation to ordering the bricks, or in the nature of calling for bids, accepting of a bid or letting of a contract for the purchase of the bricks." The court found as conclusions of law that defendant is not liable on an implied contract, or in *assumpsit,* but if liable at all, is liable only for the conversion of the bricks, and that plaintiff has, therefore, mistaken his remedy. Judgment passed for defendant from which plaintiff appeals on the judgment-roll alone.

It has been frequently decided by the supreme court of this state that where personal property has been wrongfully taken and converted, the owner has his election to sue in tort for the conversion, or he may waive the tort and sue in *assumpsit,* on an implied contract to pay the reasonable value of such property. (*Fratt* v. *Clark,* 12 Cal. 89; *Roberts* v. *Evans,* 43 Cal. 380; *De La Guerra* v. *Newhall,* 55 Cal. 20; *Lehmann* v. *Schmidt,* 87 Cal. 15, [25 Pac. 161]; *Chitenden* v. *Pratt,* 89 Cal. 173, [26 Pac. 626]; *Lataillade* v. *Orena,* 91 Cal. 565, [25 Am. St. Rep. 219, 27 Pac. 924]. See, also, Pomeroy's Remedies and Remedial Rights, secs. 568-571.]

In *Roberts* v. *Evans,* the action was to recover the value of certain personal property alleged to have been sold and delivered by plaintiff to defendant, and proof of the wrongful taking was held sufficient to sustain *assumpsit* for its value. In *De La Guerra* v. *Newhall* the complaint alleged an express promise, and evidence of the wrongful taking of the property under an implied promise was held sufficient, and proof of an express promise to pay was unnecessary.

The court erred in its conclusion that plaintiff could not recover for the sole reason that he had chosen the wrong form of action. If, however, the judgment can be sustained

on any ground it is our duty to affirm it.    The charter of the defendant city provides that "no contract for the payment of more than one hundred dollars shall be effective unless authorized by a vote of the board of trustees," of whom there are nine.    The charter directs as to the course to be taken when a contract is so authorized.    The mayor must approve or disapprove; if he disapprove, the trustees must proceed to consider and vote on the contract and on the affirmative vote of six it shall become a valid contract the same as if signed by the mayor, and not otherwise.    Charter section 23 (Stats. 1893, p. 551), subdivision 22 of section 25 (Stats. 1893, p. 553) confers the power on the board to make appropriations for certain purposes; also to make contracts "for the use and benefit of the city," in all cases specifying the fund out of which payment is to be made, and it is provided that "should the board, or a majority thereof, contract or create any debt against the city contrary to the provisions of this charter, such debt, claim or obligation shall be null and void as against the city or any of its funds."    The charter gives the board power "to control, enlarge, improve, or abolish the cemeteries heretofore belonging to the city, and to create other cemeteries" (subd. 24, sec. 25; Stats. 1893, p. 554) ; and their control and management are provided for by article XV, section 194, et seq., Stats. 1893, p. 604.

It is perfectly clear that there was no express contract, as the court found.    The charter forbids any kind of a contract for the expenditure of more than one hundred dollars, unless authorized by a vote of the board of trustees given in the manner therein provided.    It must be upon some principle of estoppel or upon an implied contract or liability arising independently of charter provisions that relief may be given, if at all.    The case may appear to justify the doctrine of equitable estoppel as applied in some cases decided by our supreme court, cited by appellant.    It seems to us, however, that if any substantial or practical results are to be achieved by the restrictions upon the powers of municipal boards of trustees to incur liabilities, which have been placed in charters, it will be impossible to bring any such results about if the provisions must give way under all circumstances to the principle upon which equitable estoppels are generally applied.    Plaintiff must be charged with knowledge of the char-

ter provisions in force when he delivered the bricks. He therefore knew that a single trustee—one out of nine—could not legally act for all, and there is no pretense that this trustee was acting as the agent of his co-trustees or that he assumed to so act. And if he had assumed to be acting for all, and plaintiff so understood it, the principle of ostensible agency does not extend to such a case. Plaintiff would still be put upon inquiry as to the trustee's authority to so act, for plaintiff is presumed to have known that no liability against defendant for over one hundred dollars could be legally created except in the manner provided by the charter. It appears that Mr. Paine acted without consulting his co-trustees, and in entire disregard of charter provisions. It does not appear, except inferentially, that the other trustees had any knowledge of the transaction relating to the forty-four thousand bricks. They seem to have had some knowledge as to nine thousand, for they caused the claim for them to be paid. The charter restrictions were enacted to protect the property-holders of the city, plaintiff among them, against just such transactions as this one. Plaintiff acted as much in violation of the charter as did the trustee who bargained with him. These facts and considerations take from the final action of the trustees, in rejecting the claim, much of its apparent inequity. Instances are becoming too frequent where parties endeavor to fix illegal liabilities upon municipalities under the doctrine of equitable estoppel, thus seeking to avoid injurious consequences which they knowingly brought upon themselves. The courts have in some cases of peculiar hardship, and where the circumstances seemed to demand it, come to the relief of persons dealing with municipalities. Appellant has cited some of these in support of his contention, notably *Higgins* v. *San Diego Water Co.*, 118 Cal. 524, [45 Pac. 824, 50 Pac. 670]; *Sacramento Co.* v. *Southern Pacific Co.*, 127 Cal. 217, [59 Pac. 568, 825]; *Contra Costa Water Co.* v. *Breed*, 139 Cal. 432, [73 Pac. 189]. The still later case of *Times Publishing Co.* v. *Weatherby*, 139 Cal. 618, [73 Pac. 465], it seems to us is so nearly parallel with the case before us as to be controlling. In that case some printing work had been done under a contract entered into by the city council of the city of Eureka and payment therefor was ordered by them. The treasurer,

Weatherby, refused to pay the claim. The court said: "The ground upon which respondent failed to pay the warrant was, that no valid contract for printing was made as required by the city charter. Section 167 of the charter has this sweeping provision: 'The city of Eureka shall not be, and is not, bound by *any contract,* or in any way liable thereon, unless the same is made in writing by order of the council, and the draft thereof approved by the city attorney and the council and the same ordered to be and be signed by the mayor or some other person authorized thereto in behalf of the city; but the council, by an ordinance, may authorize an officer, committee, or agent of the city to bind the city without a contract in writing for the payment of any sum of money not exceeding three hundred dollars.' There was no compliance with this provision touching the printing here involved, and it is so stringent and prohibitive, and so comprehensive in its scope, that we see no way to protect appellant from the harsh consequences which follow the neglect to have the contract executed as required by the charter." We have carefully compared the charters of these two cities, and, while there is a difference in phraseology, we discover no substantial difference in their meaning; both are equally stringent, prohibitive, and comprehensive, though different in their forms of expression. No court, with consistency, could deny relief in the one case and allow it in the other. This doctrine of equitable estoppel was invoked in *Santa Cruz Rock Pavement Co.* v. *Broderick,* 113 Cal. 628, [45 Pac. 863]. There the work had been completed, accepted, and ordered paid, but the auditor refused to draw his warrant on the treasury. The court said: "In entering into the contract, the plaintiff was charged with knowledge of all the limitations upon the powers of the board of supervisors. He knew that the board had no power to authorize the contract for doing the work, unless it had invited sealed proposals therefor, and he entered into the contract with the knowledge that he had not made any proposal for doing the work. Having thus performed a contract which he knowingly entered into in disregard of statutory requirements, he is not in a position to claim any equitable consideration by reason of its performance." The court further said that to enforce a promise subsequently made to pay for work which had been con-

I Cal. App.—30

tracted for in disregard of charter restrictions "would set at naught all limitations upon municipal powers, and, as was said in *Sutro* v. *Pettit,* 74 Cal. 337, [5 Am. St. Rep. 442, 16 Pac. 7], 'put the people in the complete power of careless or unscrupulous officers.' "

The Consolidation Act of San Francisco was probably more stringent than the Eureka or the Sacramento charter; but we do not think the courts should split hairs, or be eager to discover distinctions between charters, in order to protect persons who have knowingly acted in violation of their plain provisions, even though the municipal authorities have participated in such violations.

*Sacramento Co.* v. *Southern Pacific Co.,* 127 Cal. 217, [59 Pac. 568, 825], was a case where the supervisors of the county agreed with defendant to share the cost of a bridge to be used jointly by the people for general travel and by defendant for a railroad track. The bridge was completed under the contract which was entered into by plaintiff and defendant, in good faith and upon advice of plaintiff's law officer, and defendant was paid by plaintiff for its expenditures as provided by the contract. Subsequently the county undertook to recover back this money, but the court held against it, although apparently conceding that the contract might have been declared void had timely proceedings been instituted. We can conceive of many reasons why the county should be estopped from recovering back money paid out under such circumstances which would not apply here.

In the Contra Costa Water Company case the circumstances were peculiar and quite different from the facts in the present case. It appeared that "the city council, in its corporate capacity, did absolutely approve respondent's claims and ordered them paid." Furthermore, "there were no 'restrictions imposed by the charter' absolutely prohibiting the action of the city council involved." Besides, the city was under the necessity of having water from day to day, and in point of fact, the claims made out and ordered paid by the council were at a less rate than had been declared reasonable by the ordinance of the city. The principle of estoppel was applied, as in the Sacramento County case, but there is a broad distinction between the two cases and the one here.

*Higgins* v. *San Diego Water Co.*, 118 Cal. 424, [45 Pac. 824, 50 Pac. 670], was likewise peculiar in its circumstances. For an explanation of the scope of the decision we refer to concurring opinion of Chief Justice Beatty in *Contra Costa Water Co.* v. *Breed*, 139 Cal. 432, [73 Pac. 187], in which he shows how it came about that recovery could be had upon *quantum valebat* while denying the validity of the contract. The case lends no strength to appellant's contention.

Whatever may have been the reasons in the cases cited by appellant for avoiding the enforcement of the restrictions upon the powers of municipalities there involved, we do not think the doctrine of equitable estoppel should be extended to the present case, or any similar case. To do so would be to throw down all the bars that have been raised to protect the people from the consequences of charter violations and would smooth the way to dangerous inroads upon municipal treasuries. There may be an apparent injustice in some cases in adhering strictly to charter provisions. Individuals may suffer, but it is better so than that entire communities should be deprived of the protection given them against infractions of the law by which they are governed, especially where the loss falls upon one who has knowingly taken upon himself the risk of loss.

The judgment is affirmed.

Buckles, J., and McLaughlin, J., concurred.