[Civ. No. 4651. First Appellate District, Division One.—August 28, 1924.]

## TOWN OF MILL VALLEY (a Municipal Corporation), Respondent, v. MASSACHUSETTS BONDING AND INSURANCE COMPANY (a Corporation), Appellant.

[1] STREET LAW—BID BOND—LAW APPLICABLE—RECITALS IN PROCEEDINGS.—Where the resolution of intention to do certain street work recites that the same is to be done in pursuance of the Improvement Act of 1911, the specifications likewise so provide, the notice inviting bids refers to the resolution of intention for further particulars and also to the plans and specifications, the language of the bid made in pursuance thereof expressly recites that the work is to be done according to the requirements of the plans and specifications, and the bond given by the surety company is declared to be conditioned upon the faithful performance of the contract "in such case as required by statute," the statute referred to in such bond can be no other than the act of 1911, expressly mentioned in the resolution of intention and in the specifications; and, under such circumstances, the surety company cannot say that the bid was not submitted with the complete understanding that the contemplated work was to be under that act, or that it did not form a part of the contract.

[2] ID.—FAILURE TO ENTER INTO CONTRACT—FORFEITURE UNDER BID BOND—CONSTRUCTION OF IMPROVEMENT ACT.—The language of section 10 of the Improvement Act of 1911 providing for a forfeiture if the bidder to whom the contract is awarded "fails, neglects or refuses to enter into the contract" to perform the work, is plain and unambiguous; and the forfeiture provisions of said section are applicable to bid bonds the same as to certified checks—the only difference being that, in order for the trustees to avail themselves of the benefits of the forfeiture where a bond accompanies the bid, a suit is necessary where payment of the amount is refused.

[3] ID.—STATUTORY FORFEITURES—EQUITY—DAMAGES—PLEADING.—A court of equity has no power to disregard or set aside the express terms of statutory legislation; hence, in an action upon a statutory bond given in connection with a bid for the doing of certain street work under and in pursuance of the provisions

2. See 19 Cal. Jur. 373.

3. See 12 Cal. Jur. 638; 10 R. C. L. 338.

of the Improvement Act of 1911, the plaintiff is not required to plead that it suffered any damage by reason of the failure and neglect of the bidder to enter into the contract, or that the nature of the case is such that it is impracticable or extremely difficult to fix the actual damage resulting from such failure and neglect on the part of the bidder, and neither the provisions of sections 1670 and 1671 of the Civil Code nor the equity rules against forfeitures are available to the defendant surety company.

[4] ID.—CONFLICT BETWEEN BOND AND STATUTE—LIABILITY OF OBLI-GORS.—The mere fact that the bond given in connection with a bid for the doing of certain street work under and in pursuance of the provisions of the Improvement Act of 1911 differs in certain particulars from the conditions prescribed in that act, in that it recites that the bond runs to the town instead of to the superintendent of streets, and contains the further recital, contrary to the statute, that the obligors will pay to the town the sum named therein as "liquidated damages" for failure and neglect to enter into the contract, does not in anywise change the character of the bond so as to require pleading and proof of actual damage, as the law in effect at the time of the execution of the bond becomes a part of it, and such recitals in the bond do not supersede the statutory conditions where the town does not consent thereto.

[5] ID.—EXERCISE OF DISCRETION—COST OF WORK UNAFFECTED—VA-LIDITY OF ASSESSMENT.—While it is proper and indeed necessary that all the provisions and requirements of the law authorizing the levy of assessments and taxes upon property should be strictly followed where a strict observance thereof is reasonably practi-cable, if it does not appear as a matter of law or fact that the exercise of discretion by the engineer will either materially increase or decrease the cost of the proposed improvement beyond or below that contemplated by the contract, a judgment invali-dating the assessment because of the delegation of such dis-cretion will be not only inequitable and unjust but highly un-conscionable.

[6] ID.—SUFFICIENCY OF PLANS AND SPECIFICATIONS—DISCREPANCIES—DISCRETION—COST.—Where the plans and specifications for the doing of street work are sufficient to enable the contractors to bid on the contract, the successful bidder is not legally excused from entering into the contract, or the surety on his bid bond released from lia-bility thereon, merely because there are minor or trivial discrepan-cies or conflicts in the plans and specifications, or the plans and

---

5.  See 19 Cal. Jur. 166.
6.  See 19 Cal. Jur. 258, 371.

specifications are such that, in certain particulars, discretion can be used by the contractor or the engineer, but the cost of the improvement is not thereby materially increased or decreased.

(1) 28 **Cyc.**, p. 1030.    (2) 29 **Cyc.**, p. 1033.    (3) 28 **Cyc.**, p. 1033; 36 **Cyc.**, p. 1103.    (4) 9 **C. J.**, p. 35, sec. 56.    (5) 28 **Cyc.**, p. 1133. (6) 28 **Cyc.**, p. 1033.

APPEAL from a judgment of the Superior Court of Alameda County. Joseph S. Koford, Judge. Affirmed.

The facts are stated in the opinion of the court.

Kirkbride & Gordon and Thomas, Beedy & Lanagan for Appellant.

H. C. Symonds for Respondent.

TYLER, P. J.—Action upon two statutory bonds given in connection with bids for the doing of certain street work. Defendant company was sued as surety thereon for the failure of its principal to comply with the requirements both of the bonds and of the statutory provisions the observance of which they were given to secure. Recovery is sought for the entire amount due upon the bonds, claimed to have been forfeited under the express provisions of the statute and under the terms of the bonds executed in conformity therewith. Judgment went for plaintiff in the court below, and defendant appealed under the alternative method from the judgment after its motion for a different judgment on the findings and for a new trial had been denied.

Appellant challenges the sufficiency of the complaint and the propriety of the judgment, and assigns numerous grounds in support of its appeal.

Plaintiff, the Town of Mill Valley, is a municipal corporation of the sixth class, and undertook to do certain work under two resolutions of intention passed on the same day. Both these resolutions recited that they were passed pursuant to the provisions of the acts of the legislature designated "Improvement Act of 1911" (Stats. 1911, p. 730) and "Improvement Bond Act of 1915" (Stats. 1915, p. 1441). These resolutions contained appropriate recitals to the effect that the contemplated work was in the opinion

of the board of more than local or ordinary public benefit, and that the board made the expense of the work chargeable upon a district. Subsequent proceedings were regularly had leading up to the accomplishment of the contemplated improvements. Among these proceedings was one under which sealed proposals were invited. In response thereto Ransome-Crummey Co., a corporation, submitted bids for the doing of the proposed work. Each of these bids was accompanied by a bond executed by appellant as required by the notice inviting sealed proposals, conditioned for the faithful performance of the contract. They were identical in form, one being in the sum of three thousand five hundred dollars and the other for seven thousand dollars. The complaint alleges and the court found that plaintiff accepted the bids of Ransome-Crummey Co. and by resolution awarded that company the contracts for the work at the prices named in its proposals, and that the said company failed and neglected to enter into the contracts, or either of them, so awarded to it. As heretofore stated, this action is against the surety on the bonds mentioned to recover the full penal sums with interest and costs. Judgment went for plaintiff as prayed, and defendant appeals. The complaint contained no allegation that plaintiff suffered any damage by reason of the failure and neglect of the company to enter into the contracts awarded to it. Nor does it contain any allegations to the effect that the nature of the case was such that it was impracticable or extremely difficult to fix the actual damages resulting from such failure and neglect on the part of the company. On the contrary, the complaint proceeds, and judgment was rendered, upon the theory that plaintiff was entitled to recover the amount of the bonds as a penalty under the express provisions of section 10 of the Improvement Act of 1911 (Stats. 1911, p. 730).

In support of its appeal and as ground for reversal appellant first claims that the published notice inviting proposals, the bid offered in response thereto, the bond accompanying the bid, and the acceptance of such bid constituted the contract between the parties, of which section 10 of the Improvement Act of 1911 did not become a part; that even assuming that the provisions of section 10 and of the act did become a part of the contract, the burden was neverthe-

less upon plaintiff to allege and prove damages, since no penalty or forfeiture is expressly prescribed by the terms of the said section. The further contention is made that in any event, and even if by said section a penalty or forfeiture is prescribed, it is limited to a certified check and does not include a bond, and in an action upon that instrument damages should be alleged and proved.

The still further claim is made that a statutory forfeiture is inapplicable to the case for the reason that appellant surety company by the express terms of its bond excluded any liability for a statutory forfeiture or penalty. It is accordingly claimed that sections 1670 and 1671 of the Civil Code and the equity rules against forfeitures control the case, and that therefore plaintiff should have pleaded and proved its damage.

We will first discuss the question as to whether or not the act formed and became a part of the contract of the parties.

[1] It is conceded that the trustees of the town contemplated that the Improvement Act should control in all respects. That the company so understood the situation is equally clear. The resolution of intention to order the work expressly recited that the same was to be done in pursuance of this particular act. The specifications likewise so provided. The notice inviting bids referred to the resolution of intention for further particulars and also to the plans and specifications. The language of the bids made in pursuance thereof expressly recited that the work was to be done according to the requirements of the plans and specifications. The bonds given by the company were declared to be conditioned upon the faithful performance of the contracts "in such case as required by statute." The statute referred to in the bond could therefore be no other than the act of 1911, expressly mentioned in the resolution of intention and in the specifications.

Under all these facts and circumstances it is idle to say that the company did not submit its bid with the complete understanding that the contemplated work was to be done under the act, and that it did not form a part of the contract. Such a complete reference to the act could have no other possible effect.

[2] Equally untenable is the contention that no penalty or forfeiture is prescribed by the act itself. Section 10 thereof in terms clearly prescribes and authorizes a forfeiture, and it provides under what circumstances such forfeiture shall be incurred. That provision declares ''All proposals or bids shall be accompanied by a check payable to the city, certified by a responsible bank, for an amount which shall not be less than ten per cent of the aggregate of the proposal, or by a bond for the said amount and so payable.'' The language relating to the forfeiture is as follows: ''But if any bidder fails, neglects or refuses to enter into the contract to perform said work or improvement, as hereinbefore provided, then the certified check accompanying his bid and the amount therein mentioned shall be declared to be forfeited to said city, and shall be collected by it and paid into the general fund, and any bond forfeited may be prosecuted and the amount due thereon collected and paid into said fund.''

This language does not, as contended, fall short of prescribing a forfeiture; nor does it, as claimed, amount to a mere declaration of duty authorizing the trustees to declare a forfeiture, in which event the city might be limited to a recovery of actual loss sustained. The statute itself creates the forfeiture if language means anything, for the terms employed are plain and unambiguous. When the bid is accompanied by a check the provision recites that it shall be ''declared to be forfeited,'' and immediately following in referring to a bond it recites that ''any bond forfeited may be prosecuted and the *amount due thereon collected.*'' While the act does not provide an express declaration in the case of a bond as it does in referring to the check, the language of the section clearly contemplates that a statutory forfeiture occurs upon failure to enter into the contract in either event. When a bond is declared forfeited and payment of the amount is refused, of necessity a suit must follow to enable the trustees to avail themselves of the benefits of the forfeiture, namely, the amount due thereon. But that a forfeiture is prescribed and imposed expressly under the act itself upon failure to enter into the contract there can be no question. The same reason and intent apply in both cases.

Such is the conclusion reached by Mr. Page in his work on California Street Law (sec. 150, p. 146), in construing the effect of the decision in *Perine etc. Co.* v. *Pasadena,* 116 Cal. 6 [47 Pac. 777]. In that case the court was dealing with an identical provision contained in the Vrooman Act (Stats. 1885, p. 147), and it was held it contemplated a forfeiture for failure to enter into a street contract when such contract was legal. To the same effect are the cases cited in 1 Pomeroy's Equity Jurisprudence, fourth edition, section 458. It is there said "that whenever any forfeiture is provided for by statute, to be incurred on the doing or not doing of some specified act, equity can afford no relief from it, and the same is true of a statutory penalty."

[3] A court of equity has no power to disregard or set aside the express terms of statutory legislation, however much it may interfere with the operation of common-law rules. Hence any pleading or proof of actual damage has no place in a case where equity does not apply. This being so, the sections invoked by appellant can avail it nothing.

[4] This brings us to the final contention of appellant upon the subject, namely, that a statutory forfeiture is inapplicable to the case for the reason that appellant surety company by the express terms of its bond excluded any liability for such forfeiture or penalty.

This claim is based upon the fact that the bonds given differ in certain particulars from the conditions prescribed by the statute. By section 10 of the act the successful bidder is required to enter into a contract to execute "a bond to the satisfaction of the superintendent of streets of said city," etc. The bonds in suit were conditioned that the company would enter into a contract to the satisfaction "of the said town of Mill Valley." The bonds also contained the further recital, contrary to the statute, that the obligors would pay to the town the sums named therein as *liquidated damages* for failure and neglect to enter into the contract. The law at the time of the execution of a bond is a part of it; if it gives to the bond a certain legal effect it is as much a part of the bond as if in terms incorporated therein, and must be construed with the statute (*Hub Hardware Co.* v. *Aetna Acc. & Liability Co.,* 178 Cal. 267 [173 Pac. 81]; *Milliron* v. *Dittmann,* 180 Cal. 443 [181 Pac.

779] ; 9 Cor. Jur., p. 34). This being so, the mere fact that the bonds run to the town of Mill Valley instead of to the superintendent of streets is of no moment (*Tulsa Rig Reel & Mfg. Co.* v. *Hansel,* 69 Okl. 131 [170 Pac. 512] ; Cor. Jur., p. 30). Here it was expressly stated in the bonds that its principal would furnish the faithful performance bond required by the statute; and there is nothing to show that the parties intended to execute a bond other than the one the statute required. The insertion in the bonds of the phrase "liquidated damages" does not in anywise change their character or limit the liability thereon so as to require pleading and proof incident to such damages. The amount thereof was the same as required by the statute. There was therefore no attempt by the parties to limit liability under the bonds in this particular. Under these circumstances, whether the amount be considered as a penalty or as liquidated damages is of no moment, for in either event the instruments are absolute undertakings to pay the amount named therein, and are not conditioned against loss or damage requiring pleading and proof. (*Reed* v. *Omnibus R. R. Co.,* 33 Cal. 212; *State* v. *Alcorn* (D. C.), 145 Fed. 995.) Alterations that do not change the legal effect of a written instrument do not affect liability thereon. The bonds given did not supersede the statutory conditions. A contract must receive such an interpretation as will make it lawful and operative if it can be done without violating the intention of the parties (Civ. Code, sec. 1643). Of course, had the obligors intended to limit their liability and the town had consented thereto, it might have been bound thereby, as the bonds were given for its benefit. The case, however, does not present this situation.

Appellant also attacks the legality of the work proceedings. In this connection it claims that the plans and specifications are indefinite and uncertain in a manner which invalidates them, and in consequence contends appellant's principal was excused from entering into the contracts. Some twenty instances of claimed defective proceedings are assigned as going to support its claim.

The objections are highly technical and in our opinion are unsubstantial and without merit. The specifications were definite and certain enough to enable appellant's principal

and others to bid on the contract, and it would seem that they ought to be sufficient to enable the company to perform the work thereunder. However this may be, most of the objections are directed to the claim that the specifications permit of the exercise of discretion on the part of the engineer.

[5] It has been repeatedly held in this state that where it does not appear as a matter of law or fact that the exercise of discretion will result in either materially increasing or decreasing the cost of the proposed improvement beyond or below that contemplated by the contract, a judgment invalidating the assessment because of the delegation of such discretion would not only be inequitable and unjust but highly unconscionable. It is proper and indeed necessary that all the provisions and requirements of laws authorizing the levy of assessments and taxes upon property should be strictly followed where a strict observance thereof is reasonably practicable. Yet, as is said in *Chase* v. *Troutt,* 146 Cal. 365 [63 Pac. 1078], however desirable it would be to have the precise details of the work, even to the smallest fraction, fixed in advance of the bids so that the exact cost to the contractor as well as the contract price may be known when the contract is let, it has been and always will be impossible to do so. (See, also, *Haughawout* v. *Hubbard,* 131 Cal. 678 [63 Pac. 1078].) The specifications must therefore always fail, more or less, in certainty or completeness of detail, and hence the most accurate and detailed specifications must leave unprovided for many questions arising in the course of the work as to the kind and amount of work and the amount of materials and other details. The giving of discretion to some person is therefore inevitable. Statutes dealing with street work recognize this condition, for they generally provide that the work must be done to the satisfaction of some officer supervising the performance of the contract (*Haughawout* v. *Raymond,* 148 Cal. 312 [83 Pac. 53]; *Dillingham* v. *Welch,* 179 Cal. 656 [178 Pac. 512]; *Thoits* v. *Byxbee,* 34 Cal. App. 226 [167 Pac. 166].) If this were not so, few if any contracts of this character could be enforced.

[6] Viewed in the light of these decisions we will briefly enumerate some of the objections urged.

It is claimed that the specifications relative to concrete for base and the mixing thereof are conflicting and therefore defective. Under the head of "Mixing and placing concrete" the following provision appears: "All mixing of concrete shall be done in a batch mixer, the materials shall be placed in a drum as nearly as possible simultaneously. After all the materials are in the drum mixing shall continue for at least one minute at a rate of speed of not less than twelve revolutions per minute." Other provisions somewhat in conflict with the above and following the heading "Concrete base course" are as follows: "After materials are in the drum mixing shall continue for at least twelve complete revolutions at an appropriate speed of fifteen revolutions per minute." This difference in the revolutions of the drum is one where time alone enters as an element of cost. The speeding up of the drum would remedy or take care of any cost for additional time expended. The specifications are not defective for this reason. (*Thoits* v. *Byxbee, supra.*)

Similar objection is made relating to the specifications controlling "Park curbing." The cement mixture called for is a 1–2–4 mixture in one specification and a 1–2½–4 in another. This variation is trivial and of no importance as the difference relates merely to the quantity of sand to be employed.

Again, it is complained that there are conflicting provisions relative to the time that the surface of the cement shall be watered after laying. In one place it is provided that the concrete shall be kept moist for five days, in another seven. There is no evidence that the difference in these requirements would vary materially the cost. The objection is without merit.

The same may be said of the one relating to "Expansion joints." In the specifications for concrete curbs it is provided that "expansion joints shall be placed where directed." These joints amount to mere cuts in the cement to allow of expansion or contraction. The exercise of discretion in determining the number of such cuts could not materially affect the cost of the work, and there is no evidence to show that it would. The discretion vested in the directing officer is therefore permissible and the objection trivial.

The specification calling for "Sidewalk bridge" is assailed for the reason that the details do not show complete dimen-

sions, and that the size of the posts provided for is indefinite. The objection relating to the dimensions of the bridge is made upon the claim that the radius given does not show whether it is based on the inner or outer curve line. The mere statement of this objection shows it to be trivial assuming it to be true. As to the size of the posts the specifications show that one and one-half inch pipe shall be used. The plans show a railing with an upper rail of two-inch pipe and a lower rail of one and one-half inch pipe. This, too, is a trivial objection.

The same may be said of the objection relating to the requirement of the ''shoulders'' as being conflicting. The resolution of intention calls for shoulders at certain places as indicated by the plans and specifications. The specifications provide that along each side of the paved roadway where the same does not terminate on a concrete curb or gutter shoulders shall be constructed of the size and form shown in the cross-sections. It is also provided that the shoulders shall be constructed true to the grade. It is claimed that the size of the cross-sections referred to is not fixed. The matter is one wherein discretion could be used by the contractor or engineer.

In relation to the subject ''asphaltic paint coat'' the specifications contain the provision that the proportion of asphaltic cement and gasoline or engine distillate shall be one part asphaltic cement to one and one-half gasoline or engine distillate, and shall be varied as the engineer may direct. This provision is objected to as a grant of an unlawful discretion to the engineer to vary the proportions, and as affording the opportunity to the engineer to require the contractor to furnish gasoline rather than the less expensive distillate. Other portions of the specifications in relation to the subject show that a ''glossy surface'' was the result required. The discretion given to attain this result was also a lawful one, and is controlled by *Dillingham* v. *Welch, supra.*

We do not think a review of the further objections necessary. We have carefully examined them and find no merit therein.

The judgment is affirmed.

Knight, J., and St. Sure, J., concurred.

A petition by appellant to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on October 27, 1924.

All the Justices concurred.