[Civ. No. 13401. First Dist., Div. One. May 20, 1947.]

PALO AND DODINI (a Copartnership) et al., Appellants, v. CITY OF OAKLAND et al., Respondents.

T. L. Christianson, Everett H. Roan and J. S. Wallace for Appellants.

F. B. Fernhoff and John W. Collier, City Attorneys, and Hilton J. Melby, Assistant City Attorney, for Respondents.

BRAY, J.—Plaintiffs appealed from a judgment for defendants in an action to recover a $1,000 guarantee deposit which the defendants declared forfeited for failure of plaintiffs to enter into an awarded contract.

There is no dispute as to the facts. The defendant city of Oakland advertised for bids for the concession to operate electric boats upon Lake Merritt for the fiscal year 1945-1946. On April 5, 1945, pursuant to such call, plaintiffs filed their bid, and deposited with the Oakland Board of Playground Directors their certified check for $1,000, as and for a guarantee that in the event they were the successful bidders and were awarded the contract, they would enter into a formal contract for the operation of the boats in accordance with their bid. After the bids were opened, it was seen that plaintiffs were the high bidders, and on two separate occasions, plaintiffs requested defendants to permit them to withdraw their bid. Defendants refused so to do. On April 19th, the board passed its resolution awarding the contract to plaintiffs and directed the city attorney to prepare the contract. Thereafter plaintiffs notified defendants that due to war conditions, they were unable to perform the contract, and when a formal contract was tendered them they refused to sign it or to put up the required bond for faithful performance. The board then declared the guarantee deposit forfeited and readvertised for new bids. Plaintiffs brought this action to recover the moneys so forfeited. At the time

of the trial the new bids called for by the board had not been received. Plaintiffs were unable to procure materials to build the necessary boats. The Office of Price Administration and the War Production Board refused to grant priorities.

The call for bids stated that sealed bids would be received "in accordance with the specifications adopted therefor. . . . Specifications . . . will be furnished by the Secretary of the Board. . . ." Plaintiffs' main contention is that the acceptance of their bid by defendants constituted an enforceable contract made up of their bid and the specifications furnished by defendants (even though it was contemplated that a formal contract would be executed and even though plaintiffs refused to sign the formal contract), and that performance by plaintiffs was excused by a certain clause in the specifications called the "Delivery Prevented" clause.

Plaintiffs also complain of the refusal of the court to admit the specifications in evidence. An examination of the record shows that due to a colloquy between counsel and a confusion between references to the specifications and the advertisement for bids, the court never ruled on the offer of the specifications, and plaintiffs never asked for a ruling. Apparently the case was considered in the court below as if the "Delivery Prevented" clause (the only part of the specifications pertinent to the questions involved on this appeal) had been admitted. In view of this circumstance and our decision here, it is not necessary to consider plaintiffs' contention that prejudicial error was committed by the court's failure to admit the specifications in evidence.

*Did the Acceptance of the Bid Constitute an Enforceable Contract?*

Plaintiffs have cited no California cases upon this subject, relying solely upon three cases from other jurisdictions (*L. G. Arnold, Inc.* v. *City of Hudson,* 215 Wis. 5 [254 N.W. 108]; *Pennington* v. *Town of Sumner,* 222 Iowa 1005 [270 N.W. 629, 109 A.L.R. 355]; and *United States* v. *Purcell Envelope Co.,* 249 U.S. 313 [39 S.Ct. 300, 63 L.Ed. 620]). The City of Hudson and the Town of Sumner cases are mainly based upon the holding in the Purcell Envelope case, which in turn is based upon the case of *Garfielde* v. *United States,* 93 U.S. 242 [23 L.Ed. 779]. In the latter case, pursuant to an advertisement of the Postmaster General, one Garfielde bid to convey the mails between Port Townsend and Sitka, Alaska, for a certain sum "in safe and suitable steamboats, 'with celerity,

certainty, and security.' '' His bid was accepted. Before a formal contract could be prepared the Postmaster General awarded the contract to another person. Garfielde brought suit. The court held that ''the proposal on the part of Garfielde, and the acceptance of the proposal by the department, created a contract of the same force and effect as if a formal contract had been written out and signed by the parties,'' but that as under the regulations of the Postmaster General regulating bids of this type it was provided that the Postmaster General could cancel a contract at any time, upon paying a one month's pro rata compensation, Garfielde could only recover a sum equal to one month's compensation. Practically, what the case holds is that when a bid is accepted, the acceptor is bound by that acceptance and such a contractual relationship immediately comes into being between the bidder and acceptor that the latter cannot withdraw without being liable under the terms of that contract.

In *United States* v. *Purcell Envelope Co., supra* (249 U.S. 313), the envelope company was the successful bidder under an advertisement calling for bids to supply the Post Office Department with stamped envelopes and newspaper wrappers for the ensuing four-year period. A contract was drawn up and signed by the envelope company, but, due to a change in postmaster generals, the company was notified that its contract was cancelled. In the action brought for damages for breach of contract the court based its decision on the Garfielde case and held that a contract was consummated by the acceptance of the bid and gave judgment for a sum equal to the profit the envelope company would have made had the contract been carried out. It will be noted that again here the court is holding the government to its acceptance of the bid and is referring only to the obligation of the acceptor.

In *L. G. Arnold, Inc.* v. *City of Hudson, supra* (215 Wis. 5), Arnold Company was the successful bidder on certain paving for the city. Both specifications and a copy of the contract on file in the clerk's office were referred to in the bid. They provided that the gravel to be used should come from a nearby gravel pit. After acceptance of the bid a new contract was drawn providing that the gravel should be obtained from a source seventy-five miles away. Arnold Company signed the contract but sent a letter with it to the city, that it expected the city to reimburse it for the increased cost. The city did not sign the contract. Arnold Company

proceeded with and finished the work. It then sued the city for the increased cost of procuring this gravel. Based principally upon the Garfielde and Purcell Envelope cases the court held that the acceptance of the bid by the city constituted a contract, and that Arnold Company should have stood on its rights and insisted that the city enter into the formal contract referred to in the call for bids which provided the close-in source of gravel; that the city was not obligated to pay for a variation from that contract.

In *Pennington* v. *Town of Sumner, supra* (222 Iowa 1005), in discussing a clause in the contract as entered into between the successful bidder and the town, which required a different pumping test than was required in the original specifications as referred to in the call for bids, the court stated that the acceptance of the bid constituted a binding agreement which could be enforced by the town, even though no formal contract had been signed, basing its decision mainly on the three cases above discussed.

In none of the cases cited by plaintiffs was there a situation where the bidder had refused to sign up or to proceed with his contract, or to put up the required bond; nor where a forfeit of his guarantee had been declared. They were either situations in which the acceptor was trying to get out of his bargain, or the successful bidder was trying to enforce conditions not contemplated in the original bid.

In *State* v. *Howell*, 3 Boyce (26 Del.) 387 [84 A. 871], the distinction between the situation in the cases cited by plaintiffs and the case at bar is shown. There the court refers to the rule above mentioned and holds that that rule does not apply where a deposit is required to be made to guarantee the entry into a contract by the successful bidder, for, says the court (p. 876 [84 A.]) : "The provision in the ordinance requiring that the bidder shall furnish a certified check for two hundred dollars to guarantee the execution of the contract *could have no purpose or meaning if a written contract was not required.* It will be observed that such check is not demanded to guarantee the *performance* of the contract. A bond must be given for that purpose. The expressed purpose of the check is to secure the *execution* of the contract." (First emphasis added.)

Plaintiffs have cited no case in which, as here, charter provisions requiring a formal contract are discussed.

The Oakland city charter provides (§ 126; Stats. 1911, p. 1623, as amended by Stats. 1943, p. 3318) : "The

check accompanying the accepted bid shall be held by the City Clerk until the contract, as hereinafter provided, has been entered into, and the bond accompanying the same, as hereinafter provided, is approved and filed, whereupon said certified check shall be returned to said bidder.

"If said bidder fails or refuses to enter into the contract, as hereinafter provided, then the certified check accompanying his bid, and the amount therein mentioned, shall be forfeited to the City, and shall be collected and paid into the General Fund. *Neither the City Council nor any Board shall have the power to relieve from or remit such forfeiture.*" (Emphasis added.)

Section 125 (Stats. 1911, p. 1623) provides: "All contracts shall be drawn under the supervision of the city attorney. *All contracts must be in writing,* executed in the name of the city of Oakland by an officer or officers authorized to sign the same, and must be countersigned by the Auditor, who shall number and register the same in a book kept for that purpose." (Emphasis added.)

And section 128 (Stats. 1911, pp. 1624-5) provides: "All contracts shall be signed in triplicate. . . .

"At the same time with the execution of the contract the contractor shall execute to the city and deliver to the auditor a bond . . . for the faithful performance of the contract."

Plaintiffs are charged with notice of the city's charter provisions.

In *Times Publishing Co.* v. *Weatherby,* 139 Cal. 618 [73 P. 465], plaintiff's bid for printing was accepted by the council of the city of Eureka. Although no formal contract was entered into, plaintiff did the work, but payment for it was refused by the city treasurer on the ground that no contract had been entered into as required by the city charter. A section of the charter provided: "The city of Eureka shall not be, and is not, bound by any contract, or in any way liable thereon, unless the same is made in writing . . . and . . . signed by the mayor. . . ." The court in holding that the city was not liable stated (p. 619) : ". . . we see no way to protect appellant from the harsh consequences which follow the neglect to have the contract executed as required by the charter."

In *Frick* v. *City of Los Angeles,* 115 Cal. 512 [47 P. 250], for some reason which does not appear, the Mayor of Los Angeles failed to sign the contract awarded to Frick. The

charter had a provision similar to the one in the Eureka charter above mentioned. Frick contended, first, that in equity the contract must be regarded as if the mayor had signed, and secondly, that such a charter provision is in conflict with the general law of the state concerning the manner of creating contracts and therefore unconstitutional. The court held the charter provision constitutional and that equity could not interfere as the charter provided the only mode in which the city could become bound.

In *Milligan* v. *City of Alhambra*, 110 Cal.App. 523 [294 P. 404], applying the principle that the charter provision must be followed, the court said (p. 525): "The charters of municipal corporations generally provide the manner in which contracts of the municipality may be made and the charter of the City of Alhambra so provided. (Stats. 1915, p. 1740.) It is generally held that where the mode of making municipal contracts is prescribed and limited by law, such mode is exclusive and the municipality can make a contract only in the manner provided." (Citing McQuillin on Municipal Corporations, 2d ed., § 1281, and cases.)

In *Fountain* v. *City of Sacramento*, 1 Cal.App. 461 [82 P. 637], the court stated (p. 467): "There may be an apparent injustice in some cases in adhering strictly to charter provisions. Individuals may suffer, but it is better so than that entire communities should be deprived of the protection given them against infractions of the law by which they are governed, especially where the loss falls upon one who has knowingly taken upon himself the risk of loss."

It would be a most unusual situation if the court should hold that parties who refuse to enter into a contract or to proceed with the work which under their bid they were required to do, could claim that the city was bound to them while they refused to be bound to it. Particularly is this so as they have refused to put up the required bond for faithful performance.

█ Even assuming that there was a contract as claimed by plaintiffs, the "Delivery Prevented" clause would not excuse plaintiffs' nonperformance. It reads as follows: "There shall be no obligation on the part of the contractor to perform work or deliver supplies and materials called for in the specifications, if prevented or hindered by act of God, fire, strike, lock-out, commandeering of raw materials, products or facilities by civil or military authority, or by other cause beyond the control of the contractor."

In support of his contention on that point plaintiffs cite *Ranney-Davis Mercantile Co.* v. *Shawano Canning Co.*, 111 Kan. 68 [206 P. 337], where a portion of defendant's crop was commandeered by the United States government *after the contract was entered into.*

Plaintiffs were presumed to know at the time they filed their bid that it was necessary to obtain priorities in order to be able to buy materials, and that even with priorities, materials were difficult to obtain, and that probably the last enterprise to which priorities would be granted in wartime was one operating pleasure boats. This condition had existed for practically three years. While it is true that the defendant city also knew of this situation, it probably believed that there might be concerns who owned the necessary equipment (the concern currently operating the concession was one which actually did), and who would not need to apply for priorities or for materials. Plaintiffs could not bid for the concession to provide electrically operated pleasure boats and then refuse to enter into a contract on the ground that what had happened was what they should have known would happen—they would be denied priorities. (*Krulewitch* v. *National Importing & Trading Co.*, 195 App.Div. 544 [186 N.Y.S. 838]; *Cameron-Hawn Realty Co.* v. *City of Albany*, 207 N. Y. 377 [101 N. E. 162, 49 L.R.A.N.S. 922]; *Richards & Co. Inc.* v. *Wreschner*, 174 App.Div. 484 [156 N.Y.S. 1054, 158 N.Y.S. 1129].) In *Krulewitch* v. *National Importing & Trading Co., supra*, the court says (p. 840 [186 N.Y.S.]): "The contract was not entered into before the commencement of the war. The World War had been raging for nearly four years. Interference with the commerce of the world and the ordinary facilities of obtaining and transporting merchandise was well known. Nevertheless the defendant bound itself to sell and deliver this particular merchandise during a limited period, and did not shield itself by proper conditions or qualifications from the effects of that war upon its engagement. . . .

" 'There are many extrinsic facts surrounding every business transaction, which have an important bearing and influence upon its results. Some of them are generally unknown to one or both of the parties, and, if known, might have prevented the transaction. In such cases, if a court of equity could intervene and grant relief, because a party was mistaken as to such a fact, which would have prevented him from en-

tering into the transaction, if he had known the truth, there would be such uncertainty and instability in contracts as to lead to much embarrassment. As to all such facts, a party must rely upon his own circumspection, examination, and inquiry; and, if not imposed upon or defrauded, he must be held to his contracts. In such cases, equity will not stretch out its arm to protect those who suffer for the want of vigilance.' (*Dambmann* v. *Schulting*, 75 N. Y. 55, 64.)''

Plaintiffs last point is that the forfeiting of the deposit here improperly exacted a penalty or liquidated damages, and relies on *Fox Chicago R. Corp.* v. *Zukor's Dresses, Inc.*, 50 Cal.App.2d 129 [122 P.2d 705], in which the court held invalid in the modification of a lease reducing the rental from that in the original lease, a clause to the effect that in the event of default, lessee would be obligated to pay the higher rental stated in the original lease. This was a penalty or liquidated damages which did not come under the exception ''when, from the nature of the case, it would be impracticable or extremely difficult to fix the actual damage.'' (Civ. Code, § 1671.) That was a suit to enforce the forfeiture, and not, as here, for relief from forfeiture.

█ The right of municipalities to require guarantee deposits to accompany bids, and to forfeit them in the event of the failure or refusal of the successful bidder to enter into the contract, has long been upheld. (44 C.J. 337, § 2505, and cases there cited, including *Mill Valley* v. *Massachusetts Bonding etc. Co.*, 68 Cal.App. 372 [229 P. 891].)

Plaintiffs argue that defendants here presented no evidence showing that they were damaged in any way and allege that the retention of the deposit was unlawful and unjust enrichment.

In *Booth* v. *County of Los Angeles*, 124 Cal.App. 259 [12 P.2d 72], cited on this point, property was deeded to the defendant for use as a road, to revert to the grantor or his heirs if not so used. In refusing to quiet title in plaintiff, since the property was found to be used for the purpose for which it was granted, the court said: ''The established rule is that where the right to a forfeiture is created by contract or by law it has always been considered that it was necessary to restrain it to the most technical limits of the terms and conditions upon which the right is to be exercised.''

It would seem that even restricting section 126 of the Oakland city charter to its most technical limits here, a for-

feiture would be permitted. The terms are mandatory and explicit and prohibit any relief from forfeiture.

*Ballard* v. *MacCallum,* 15 Cal.2d 439 [101 P.2d 692], the other case cited by plaintiffs, involved a trust whereby the beneficiary was required to make payments to the trustor and on failure to make them promptly, would forfeit her interest. She failed to make one payment on time. The court adopted a construction of the contract which avoided a forfeiture, saying, though not relying thereon, that ''. . . equity will relieve even against an express provision for forfeiture.''

Finally, plaintiffs quote 12 California Jurisprudence, page 633, to this effect: ''Forfeitures are never favored by courts of law or equity, and are never enforced if they are couched in ambiguous terms. Statutes and contracts are construed strictly against forfeitures or as liberally as possible to prevent them. A statute declaring a forfeiture is not to be extended beyond its direct meaning by implication, unless such implication is imperatively necessary by reason of the subject matter or terms of the statute. A forfeiture for breach of a condition in a contract is enforced only when there is such a breach shown as it was the clear and manifest intention of the parties to provide for.''

The latter would not seem to apply to section 126 of the Oakland charter. Its terms are not ambiguous and its meaning is clear and direct.

As pointed out by defendants, the case here is not one brought to enforce a forfeiture but to relieve against a forfeiture, and the burden of proof is on plaintiffs to plead and prove matters entitling them to equitable relief from such forfeiture, which they have not done.

*Parsons* v. *Smilie,* 97 Cal. 647 [32 P. 702], covers the cases in which equity will intervene and the pleadings and proof necessary to justify relief from forfeiture. Property was deeded with a condition subsequent that it be used as a lumber yard for five years. It was held forfeited because it was so used for less than a year. The court stated (pp. 652, 653-4) : ''I do not in the least contravert the general doctrine that equity will not render its aid to *enforce* a forfeiture for breach of condition subsequent in a deed; but the question presented is, how far equity shall interfere *to defeat* a forfeiture for the violation of such condition. . . . The general doctrine is, that equity will relieve where the thing may be done afterwards, or compensation can be made for it, but

that unless a full compensation can be given, so as to put the party in precisely the same situation, a court of equity will not interfere; for such jurisdiction would be arbitrary. Washburn (Real Property, vol. 2, p. 23) says: 'And the only cases where equity interposes as to such conditions are where the failure of performance has been the effect of accident, and the injury is capable of compensation in damages which the court has the means of measuring, and where the grantor can be made perfectly secure and indemnified, and can be placed in the same situation as if the occurrence had not happened. This applies to cases where the condition is for the payment of money at a particular time, and compensation for the delay can be measured by the interest during that time. But where the condition is for the performance of a collateral act, the rule is different, as the court has no standard by which to measure damages.'. . . The same author again says (p. 23): 'But if the act be wilfully done, or one for which the court has no certain rule by which to measure the damages, beyond their own arbitrary judgment in the matter, equity will not relieve.' ''

12 California Jurisprudence, page 638, states: ''There can be no leaning of the court against a forfeiture which is intended to secure the construction of a work in which the public is interested, where compensation cannot be made for the default of the party; nor where the forfeiture is imposed by positive law. To refuse a forfeiture in the latter case would be a direct contravention of the legislative will.''

An examination of plaintiffs' complaint leaves considerable doubt as to on just what theory plaintiffs are proceeding. They nowhere allege facts upon which they might ask for relief from forfeiture nor do they offer to make ''full compensation to the other party'' as required by section 3275 of the Civil Code for relief in case of forfeiture. The complaint does not allege that the acceptance of their bid constituted a contract between plaintiffs and the defendants. It apparently proceeds on the theory that defendants should have permitted the withdrawal of plaintiffs' bid as requested. They say (par. VIII of the complaint): ''That despite the declaration of plaintiffs made to said Board of Playground Directors of plaintiffs inability to fulfill the conditions pertaining to said contract, due to the prevailing war conditions, the said Board declared that the plaintiffs bid

had been accepted; that they were in default by reason of their failure to execute said Concession Agreement. . . ." Apparently, the lower court, in spite of the allegations of the complaint, treated the case as an action for relief from a forfeiture. Plaintiffs' failure to offer to comply with section 3275 of the Civil Code would bar any right to recovery. (*Christin* v. *Story,* 119 Cal.App. 326, 333 [6 P.2d 301].)

It would be very difficult to fix the money value of the city's loss. Among the factors involved are the following: First, of course, would be the cost of readvertising (and even this amount plaintiffs have not offered to pay); secondly, there would be the delay in getting a new contract; thirdly, the lower returns the city would probably receive under a new contract, now that the highest bidder had been eliminated; fourthly, the fact that possibly in view of their experience at the first bidding, the other bidders would not bid at all.

Provisions requiring a deposit accompanying a bid for city contracts, or for forfeiture thereof, are necessary as a matter of public policy to protect the public interests. If, as here, a bidder were allowed without loss to himself to withdraw his bid after the bids have been publicly opened, fraudulent practices would develop. The body awarding contracts could agree to release a favored contractor if it turned out that his proposal was low as compared to other bids. Moreover, any bidder who found that in comparison with the other bidders, his bid was quite low, could withdraw his bid, and the city would thereby lose the value of competitive bidding and be forced to pay the prices of higher bidders with no compensation to itself for the loss sustained.

The judgment is affirmed.

Peters, P. J., and Ward, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied July 17, 1947. Schauer, J., voted for a hearing.